# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MAHLON KIRWA<br>400 Magnolia St.<br>Orangeburg, SC 29115, | ) ) ) ) | |
| | ) | No. |
| SANTHOSH MEENHALLIMATH<br>8080 Eden Rd., Apt. 347<br>Eden Prairie, MN 55344, | ) ) ) ) | **COMPLAINT AND PRAYER FOR** |
| | ) | **DECLARATORY, PRELIMINARY** |
| ASHOK VISWANATHAN<br>14025 Chestnut Dr., Apt. F<br>Eden Prairie, MN 55347, | ) ) ) ) | **AND PERMANENT INJUNCTIVE,**<br>**ADMINISTRATIVE PROCEDURE**<br>**ACT, AND MANDAMUS RELIEF** |
| | ) | |
| on behalf of themselves and those similarly<br>situated, | ) ) ) | |
| PLAINTIFFS, | ) ) | |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF<br>DEFENSE<br>1000 Defense Pentagon<br>Washington, DC 20301, | ) ) ) ) ) | |
| JAMES MATTIS, in his official capacity as<br>Secretary of Defense of the United States<br>Department of Defense<br>1000 Defense Pentagon<br>Washington, DC 20301, | ) ) ) ) ) ) | |
| DEFENDANTS. | ) ) ) | |

## COMPLAINT

1.      Plaintiffs bring this action on behalf of themselves and similarly-situated United States soldiers who are the victims of a misguided and unlawful attempt to deprive them of their right to seek United States citizenship.  As non-citizen soldiers serving honorably during wartime, Plaintiffs have an absolute statutory right to apply to become naturalized U.S. citizens, but Defendants are refusing to certify their naturalization application eligibility as required by law, leaving these soldiers to languish in immigration limbo, notwithstanding their ongoing military service to this Nation.  Defendants' actions are contrary to law and lack the honor, loyalty, and respect that Defendants owe to these Plaintiff-soldiers.

2.      Defendants recruited and enlisted each Plaintiff into the United States Army under the Military Accessions Vital to the National Interest ("MAVNI") program, a program under which non-U.S. citizens with critical language and/or medical skills deemed by the Department of Defense ("DoD") to be "vital to the national interest" serve in the United States Armed Forces.  DoD recruits individuals into this "vital" program, in part, by promising enlistees a "fast track" to U.S. citizenship.

3.      Each MAVNI Plaintiff here is serving in the Selected Reserve of the Ready Reserve ("Selected Reserve") and is entitled to apply for naturalization under federal law, including 8 U.S.C. § 1440.  An initial step in the naturalization application process is the certification of Plaintiffs' honorable service in the Selected Reserve.  The Department of Homeland Security ("DHS"), which is the federal agency responsible for processing and adjudicating all naturalization applications, requires these certifications to be made via DHS Form N-426, a form specifically designated for this purpose.  Completing the N-426 certification is a ministerial task.  The service member's military branch simply indicates – by checking a box

"yes" or "no" – whether the soldier (*e.g.*, a Plaintiff or a Class member) is serving honorably based on the existing military record for that soldier.  The military has performed this ministerial task thousands of times before without complication or ordeal, including approximately 500 times in recent months alone.

4.      Due to their status as soldiers serving in the Selected Reserve, Plaintiffs and the Class satisfy the threshold legal condition necessary to obtain the Form N-426 certifications. The federal statute enabling naturalization for these soldiers, 8 U.S.C. § 1440, is clear and unambiguous:

> [a]ny person who, while an alien or a noncitizen national of the United States, has served honorably ***as a member of the Selected Reserve of the Ready Reserve*** or in an active-duty status in the military, air, or naval forces of the United States . . . during any . . . period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict . . . may be naturalized as provided in this section . . . .

8 U.S.C. § 1440(a) (emphasis added).

5.      Notwithstanding this express and well-established federal law, Defendants have implemented a new policy by which they are refusing to issue Form N-426s to Plaintiffs and other similarly-situated eligible soldiers on the grounds that the soldiers have not yet served in an active-duty status.  Defendants' policy of withholding issuance of N-426s has no lawful basis and contravenes their duty to act.  And Defendants have implemented this policy in blatant disregard for the immense suffering and mounting harm that their actions have caused to soldiers under their command.

6.      Defendants' new policy of denying N-426 certifications to Plaintiffs and other Selected Reservists stands in stark contrast to the prior policy.  Until recently – *i.e.*, before DoD instituted this new policy and before it began otherwise interfering with the naturalization

process for MAVNI applicants – soldiers in Plaintiffs' position sought (and obtained) naturalization through a well-established and orderly process that was consistent with the law:

STEP ONE:          MAVNI soldiers obtained N-426 certifications of their honorable service from the military,

STEP TWO:          DHS expedited the naturalization paperwork, and

STEP THREE:       DHS adjudicated the applications using the same fundamental citizenship factors that apply to all persons seeking to be naturalized.

7.       That once orderly, lawful, and straightforward process – applied to thousands of soldiers in years past – has morphed into a process characterized by chaos and unlawful DoD conduct.

8.       In a related action pending in this Court, *Nio, et al. v. United States Department of Homeland Security, et al.*, No. 17-cv-998-ESH (D.D.C.) (the "Nio Action"), other MAVNI soldiers (who have been issued N-426 certifications based on their Selected Reserve service) are challenging unlawful actions by DoD and others affecting STEP TWO and STEP THREE described above.  This action focuses on STEP ONE – namely, the certification of honorable service itself by DoD.  Without that certification – the ministerial action which DoD unlawfully is withholding – Plaintiffs and similarly-situated soldiers who are serving honorably in the military cannot file for naturalization and thus advance to STEP TWO.

9.       Defendants have no legal authority over the implementation or enforcement of the immigration and naturalization laws of the United States, or over the adjudication of naturalization applications.  Yet, Defendants have inserted themselves into the naturalization process by erecting a roadblock to prevent Plaintiffs and similarly-situated soldiers from

applying for naturalization by denying them the N-426 documentation that these soldiers are entitled to receive as a matter of law.

10.     Defendants' refusal to furnish certifications to these Selected Reservists is alarming, as their position is so directly in violation of federal law, regulations, and other promulgated rules.  Indeed, Defendants have admitted that DHS – the agency empowered by Congress to administer and enforce the naturalization laws – disagrees with DoD's action and has determined that DoD's policy is contrary to the statute.  In actuality, Defendants' conduct is nothing more than a poorly-thought-out and thinly-veiled effort to deny U.S. citizenship to certain MAVNI soldiers because DoD's own views about the MAVNI program have changed over time.

11.     To be clear, this Complaint does not involve or implicate the definition of "honorable" or "honorable service," but instead challenges Defendants' unlawful refusal to fulfill its ministerial duty by withholding the issuance of certified Form N-426s for soldiers who are eligible and entitled to receive such forms under the plain and clear terms of 8 U.S.C. § 1440.

12.     Accordingly, on behalf of themselves and a class of all similarly-situated individuals, Plaintiffs seek Administrative Procedure Act ("APA"), mandamus, declaratory, and preliminary and permanent injunctive relief to compel and enjoin Defendants to comply with their ministerial duties pursuant to federal law, including 8 U.S.C. § 1440, to certify Plaintiffs' honorable service as members of the Selected Reserve.

## **RELATED LAWSUIT**

13.     In the Nio Action, commenced on May 24, 2017,  ten individuals (the "Nio Plaintiffs") brought suit against DoD, DHS, United States Citizenship and Immigration Services ("USCIS"), and others (collectively, the "Nio Defendants") alleging that the Nio Defendants

were improperly depriving the Nio Plaintiffs of their lawful opportunity and right to become

naturalized United States citizens.  Specifically, the Nio Plaintiffs allege that the Nio Defendants

have impeded and delayed the adjudication of their naturalization applications by holding their

applications and/or imposing on them additional citizenship qualifications and criteria that have

no basis in law, particularly "enhanced DoD security checks."  The Nio Action currently is

pending before this Court.

14.     This Complaint involves common issues of fact and arises out of the same core

events as the Nio Action.  For example, both lawsuits involve DoD's unlawful interference in the

naturalization process of Selected Reservists recruited through the MAVNI program.  Notably, if

Plaintiffs receive the honorable service certifications to which they are entitled, allowing them to

apply for naturalization, they will be placed into the same circumstances as the Nio Plaintiffs and

should fall within the scope of the proposed class in the Nio Action.  This action also involves

the same issues of injury and harm to the respective plaintiffs and classes.  In both cases,

applications for naturalization for MAVNI soldiers are being delayed, resulting in similar or

identical injuries, harms, and difficulties.  Finally, Defendant officials have admitted that DoD is

considering applying its "active-duty" service rule to invalidate and revoke the N-426 forms that

already have been issued to the plaintiffs and proposed class in the Nio Action.

### JURISDICTION

15.     This action arises under section 329 of the Immigration and Nationality Act of

1952 ("INA"), codified at 8 U.S.C. § 1440.  This Court has jurisdiction over this action under 28

U.S.C. § 1331 (federal question) and the APA, 5 U.S.C. § 701 et seq.

## VENUE

16.     Venue is proper in the Court under 28 U.S.C. § 1391(e) because the individual

Defendant is an officer of the United States acting in his official capacities, and the United States

Department of Defense is present in this district.  Further, the individual Defendant performs

official duties in Washington, D.C.

## PARTIES

17.     Plaintiff Mahlon Kirwa resides in Orangeburg, South Carolina.  Mr. Kirwa

enlisted in the Selected Reserve through the MAVNI program in December 2015 and serves with

the U.S. Army's 414th Chemical Company in Orangeburg, South Carolina.

18.     Plaintiff Santhosh Meenhallimath resides in Eden Prairie, Minnesota.  Mr.

Meenhallimath enlisted in the Selected Reserve through the MAVNI program in February 2016

and serves with the U.S. Army's 353rd Transportation Company in Buffalo, Minnesota.

19.     Plaintiff Ashok Viswanathan resides in Eden Prairie, Minnesota.  Mr.

Viswanathan enlisted in the Selected Reserve through the MAVNI program in June 2016 and

serves with the U.S. Army's 353rd Transportation Company in Buffalo, Minnesota.

20.     Defendant United States Department of Defense is responsible for the overall

administration of military policy, which includes the MAVNI program.

21.     Defendant James Mattis is sued in his official capacity as Secretary of Defense of

the United States Department of Defense.  As Secretary of Defense, Gen. Mattis is responsible

for the overall administration of DoD, which includes the MAVNI program.

## BACKGROUND AND FACTS

### The MAVNI Program and Plaintiffs' Service Commitments

22.     Typically, U.S. Armed Forces enlistees must meet U.S. citizenship or permanent residence requirements.  10 U.S.C. § 504(b).  However, 10 U.S.C. § 504(b)(2) authorizes the Secretary of Defense and the Secretaries of the military service departments to enlist certain non-U.S. citizens and non-permanent residents if enlistment of such individuals is "vital to the national interest."  Under this authority, DoD initiated the MAVNI program in 2008 and the program has continued to operate through the present, with brief interruptions and enlistment suspension periods.

23.     The MAVNI program is designed to attract two types of recruits into the military: (a) health care professionals and (b) individuals who possess critical foreign language skills. DoD officials acknowledge that soldiers with these skills "are necessary to sustain effective military operations."

24.     Under MAVNI, DoD encouraged qualified individuals to enlist, touting the opportunity of an "expedited" path to U.S. citizenship.  DoD contractually mandated that MAVNI enlistees – including Plaintiffs – apply for citizenship "as soon as the [service branch (*e.g.*, the Army)] has certified [the MAVNI soldier's] honorable service."  This citizenship opportunity was a powerful enticement to Plaintiffs and other such qualified individuals who contemplated MAVNI enlistment.

25.     Plaintiffs are soldiers who possess the skills that DoD has deemed "vital to the national interest."  They enlisted under the MAVNI program, signed MAVNI enlistment contracts, and are serving honorably in the Selected Reserve.  Each Plaintiff has taken the military service oath.  Each Plaintiff's enlistment contract obligates him to eight years of service

in the Army Reserve, six years of which must be served in the Selected Reserve.  Each Plaintiff is assigned to a U.S. Army Selected Reserve unit, and each has served with his unit by participating in multiple Selected Reserve drill periods.

26.     The commitment that each Plaintiff has undertaken to serve as a soldier in the U.S. Army Reserve is serious and substantial.  As the standard MAVNI Army Reserve enlistment contract states, an agreement to enlist "is more than an employment agreement.  It effects a change in status from civilian to military member of the Armed Forces."  As such, per the Enlistment/Reenlistment Document Armed Forces of the United States (DD Form 4/1), soldiers (a) are "[r]equired to obey all lawful orders and perform all assigned duties," (b) are "[s]ubject to the military justice system" and, among other things, "may be tried by military courts-martial," (c) may be "[r]equired upon order to serve in combat or other hazardous situations," and (d) must otherwise "meet acceptable military standards" such that any failure to meet their service obligations as Selected Reservists can result in demotion and/or discharge from the service under other than honorable conditions.

27.     As members of the U.S. military, Plaintiffs may be required to compromise individual liberties that are considered fundamental in ordinary civilian American society.  As the enlistment contracts provide, a service member's freedom of religious expression may be curtailed:  "I understand that the Army cannot guarantee accommodation of religious practices, and that religious accommodations may be modified or revoked based on changes in military necessity."  A service member's freedom of speech, expression, and association also may be curtailed.  Consequently, prior to enlistment, the Army provides recruits with USMEPCOM Form 601-23-4 – "Restrictions on Personal Conduct in the Armed Forces" – which specifies that military service entails behavioral limitations not applicable to civilians in America:

> Military life is fundamentally different from civilian life. The military has its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society. These are necessary because military units and personnel must maintain high standards for morale, good order and discipline, and unit cohesion that are essential for combat effectiveness.

28.     As a member of the Selected Reserve, each soldier "may at any time, and without [his/her] consent, be ordered to active duty to complete a total of 24 months of active duty." In times of war or national emergency declared by Congress, these soldiers may, without their consent, "be ordered to serve on active duty for the entire period of the war or emergency and for six (6) months after its end." As members of the Selected Reserve, these soldiers may, without their consent, be ordered to 365 days of consecutive active duty whenever "the President determines that it is necessary to augment the active forces for any operational mission or for certain emergencies."

## The Applicable Statutory and Regulatory Framework

29.     The statutory and regulatory framework applicable to Plaintiffs is simple and clear. 8 U.S.C. § 1440(a), provides that:

> [a]ny person who, while an alien or a noncitizen national of the United States, has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States . . . during any . . . period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force[1] . . . may be naturalized as provided in this section . . . .

---

[1] On July 3, 2002, the President determined that the military is engaged in armed conflict. Exec. Order No. 13269, 67 Fed. Reg. 45,287 (July 3, 2002). Executive Order No. 13269 has remained in effect through the present.

30.     The key language here is that certain non-U.S. citizens qualify for naturalization under this section with honorable service "as a member of the Selected Reserve of the Ready Reserve **or** in an active-duty status." 8 U.S.C. § 1440(a) (emphasis added). This disjunctive language of the statute is clear and unequivocal: honorable service in the Selected Reserve is an independent basis for naturalization. Stated differently, naturalization under this statute is not dependent on an individual performing active-duty service.

31.     The history of the statute reinforces the separate and independent import of these two clauses. While the prior version of the statute limited naturalization to those serving in an active-duty status, the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, 117 Stat. 1392, 1693 (2003) amended the statute to add those serving as members of the Selected Reserve. Thus, Congress made clear that naturalization is available based on either service as a member of the Selected Reserve <u>or</u> service in active-duty status.

32.     DHS, which administers the naturalization laws and adjudicates naturalization applications under Section 1440(a), reads and applies this provision in the same way. DHS's final rulemaking for this statute confirms that it was amended in 2003 to include "not only [] individuals who served honorably in an active duty status . . . but also [] individuals who have served honorably as members of the Selected Reserve. . . ." 75 Fed. Reg. 2785-01 (2010) provides (with emphasis added):

> [T]his final rule extends eligibility for naturalization to include those individuals who have served honorably in the U.S. Armed Forces **either** in an active duty status **or** as a member of the Selected Reserve of the Ready Reserve. See revised 8 CFR 329.2(a). In addition, this rule amends the title of 8 CFR part 329 to include service in the Selected Reserve of the Ready Reserve. Currently, the title only lists active duty service as a basis for naturalization where service occurred during specified periods of hostilities.

Like Section 1440, the disjunctive "either ... or" is unequivocal.

11

33.     The regulations implementing 8 U.S.C. § 1440 are located at 8 C.F.R. Part 329, entitled "SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: PERSONS WITH ACTIVE DUTY OR CERTAIN READY RESERVE SERVICE IN THE UNITED STATES ARMED FORCES DURING SPECIFIED PERIODS OF HOSTILITIES."  Section 329.2 provides that a service member is eligible for naturalization under 8 U.S.C. § 1440 upon establishing that he or she "[h]as served honorably in the Armed Forces of the United States as a member of the Selected Reserve of the Ready Reserve or in an active duty status in the Armed Forces of the United States during . . . [a]ny other period as may be designated by the President in an Executive Order pursuant to section 329(a) of the Act . . . ."  Like the statute, the disjunctive language of DHS's legislative rules under Section 329.2(a) could not be clearer. Service as a member of the Selected Reserve and service in an active-duty status provide alternative paths to citizenship under Section 1440.

34.     Volume 12 of the USCIS Policy Manual, the USCIS's centralized repository for its immigration policies, explains the laws and policies that govern United States citizenship and naturalization, and further confirms that service in the Selected Reserve counts as qualifying service under Section 1440.  USCIS Policy Manual Volume 12, Part I, Chapter 3, current as of July 26, 2017 ("One day of qualifying service is sufficient in establishing eligibility.").

35.     Thus, just as one day of active-duty service is sufficient for naturalization eligibility, so is one day of Selected Reserve service.  On July 7, 2017, DHS admitted this directly in sworn testimony to this Court (emphasis added):  "As members of the U.S. Armed Forces during a period of hostilities, MAVNI recruits are eligible to apply for naturalization under section 329(a), 8 U.S.C. § 1440, *once they join the military*."

36.     DHS regulations also confirm that the service requirement can be satisfied either through any current service that is honorable or a separation from military service under honorable conditions: "*[h]onorable service and separation* means service and separation from service which the executive department under which the applicant served determines to be honorable . . . ." 8 C.F.R. 329.1 (emphasis in original).

37.     The N-426 Form is the official form established by USCIS for certification of a soldier's "honorable service" status.  The form – entitled "USCIS Form N-426: Request for Certification of Military or Naval Service" – reflects the statutory option of such service either via Selected Reserve membership *or* active-duty status, does not indicate any minimum tenure of service for naturalization eligibility, and reflects that current or past service is qualifying.

38.     The service department "under which the applicant served or is serving" certifies the member's honorable service to USCIS officials.  8 C.F.R. 329.4.  DoD previously had shown no confusion (at least until the unlawful actions complained of herein) regarding the ability to naturalize based on service in the Selected Reserve.  In fact, the Army recited the statutory framework for citizenship in the standard enlistment contract (emphasis added below):

> 3.     I understand that I am enlisting under a federal law that allows the Secretary of the Army to authorize the enlistment of certain non-citizens of the United States (10 U.S.C. 504(b)(2)).  I also understand that I am enlisting during a period of time in which any alien who serves honorably as a member of the Selected Reserve of the Ready Reserve *or* in an active-duty status in the military, air or naval forces of the United States may apply for United States Citizenship (8 U.S.C. 1440). . . .
>
> 4.     In exchange for being permitted to enlist in the Army, I agree to apply for U.S. citizenship as soon as the Army has certified my honorable service. I understand that the Army does not grant U.S. citizenship, and the Army does not guarantee that my application for U.S. citizenship will be approved.

**Defendants Are Withholding Their Mandatory and Ministerial Duty**

39.     Under federal law, the authority to administer and enforce all laws relating to the immigration and naturalization of aliens is vested in DHS and its component agency, USCIS. Defendants have no legal authority to implement or enforce the immigration and/or naturalization laws of the United States.

40.     By statute, Defendants' role in the naturalization of MAVNIs is compulsory and ministerial.  Indeed, Defendants admitted to this Court in the Nio Action that "DoD serves a ministerial role in determining if an individual is serving honorably[.]"  The service member's executive department (*i.e.,* service branch) merely certifies to DHS – the agency responsible for adjudicating and conferring citizenship – the service member's honorable service.  DHS created and requires the use of Form N-426 for this purpose.

41.     Form N-426 instructs the military to consult a soldier's existing service records and, on that basis, designate "yes" or "no" as to whether the soldier's service is "honorable." Because the form can be completed through a simple service record look-up, USCIS specifically authorizes that designation to be certified by "personnel office, administrative unit, command, or human resources department" personnel.

42.     The choice on the form is binary.  For service members eligible to apply for naturalization under 8 U.S.C. § 1440, either the soldier is serving honorably or not, based on the individual's service record.  Neither the form nor the statute authorizes DoD to refuse to make that choice or to otherwise withhold making the designation for Selected Reserve soldiers based on the absence of service in an active-duty status or for any other unlawful reason.

43.     Yet, in disregard and defiance of the relevant statutes and implementing regulations, Defendants are withholding issuance of Form N-426 certifications to Plaintiffs and

similarly-situated MAVNI soldiers and thereby impeding and preventing the exercise of their statutory right to seek naturalization.

### Defendants' Unlawful N-426 Withholding and Unlawful "Active-Duty Status" Policy

44.     Plaintiffs have fulfilled their obligations under the law and their enlistment contracts.  They possess the language and/or medical skills deemed "vital" by DoD.  They enlisted as members of the Selected Reserve during a period of armed conflict, thereby serving a "vital national interest."  They are serving, including by attending drills with their units, and are doing so honorably.

45.     Defendants, contrary to the plain language of federal law, including 8 U.S.C. § 1440, have blocked Plaintiffs' "expedited" path to citizenship by refusing to certify Plaintiffs' honorable service as members of the Selected Reserve.

46.     Instead, DoD has directed relevant commands to withhold issuance of any N-426 certifications to Selected Reserve soldiers at least until these soldiers serve in an active-duty status.  According to Defendant officials, "DoD is not certifying any new MAVNI N-426s" and pursuant to its policy, DoD may rescind prior honorable service certifications that Selected Reserve MAVNIs received without active-duty service.  This policy, on its face, unlawfully disrupts and interferes with the naturalization processing of Selected Reserve MAVNIs, including Plaintiffs, because DHS will not accept, process, or adjudicate a naturalization application from a Selected Reservist if that application does not include an N-426 signed by the military.

47.     DoD's policy is clear and final, and it is impacting Plaintiffs and similarly-situated MAVNI soldiers.  On July 7, 2017, a DoD official submitted sworn testimony to the

Court in the Nio Action, confirming that "[p]resently, DoD is not certifying any new MAVNI N-426s." Thus, the policy is being applied to Plaintiffs and each and every member of the Class.

48.     Thereafter, on July 28, 2017, the same DoD official submitted another sworn statement, this time attesting that "DoD has recently determined that the IDT drill periods performed by members of the Selected Reserve . . . are defined in law as not being creditable active duty service . . . and, standing alone, do not qualify for certification of honorable service under 8 U.S.C. § 1440."

49.     Even more recently, on August 17, 2017, an Army Lieutenant General issued orders via memorandum to commands to which MAVNI Selected Reservists are assigned ("DoD August Memo"). The subject of that DoD August Memo is "Certification of Honorable Service Pursuant to 8 U.S. Code § 1440," and it orders as follows:

> Effectively immediately, I withhold authority to certify the honorable service (N-426) of Soldiers who have not yet attended Initial Entry Training (IET). Commanders seeking certification for Soldiers who have not attended IET must provide a detailed justification to the OCAR, G1 that includes an explanation of all periods of active-duty service.

50.     On August 23, 2017, DoD representatives confirmed to this Court that "[t]his document indicates . . . that effective immediately [the issuance of N-426s has] been withheld" and that the message that had been sent out to "everybody in the field" was "not to issue them [N-426s]" and "not to issue anymore of them [N-426s]."

51.     On August 30, 2017, DoD further confirmed to this Court that DoD is not certifying any MAVNI N-426s while DoD "undertakes a review of the MAVNI program," but DoD did not provide any indication of what that review entails or how long it may take. And, in sworn testimony on that same day, DoD admitted that the DoD August Memo (1) withholds, for

an indefinite period of time, N-426 certifications, and (2) was a response to DoD concerns that Army officials "prematurely" certified N-426s in the past.

52.     As specified above, DoD has a mandatory, non-discretionary duty to complete N-426 Forms for those soldiers (including Plaintiffs and the Class) eligible to apply for naturalization under the statute, and the DoD policy prohibiting military officials from completing those forms is unlawful.  As described above, DoD's "active-duty" service policy in particular is contrary to the plain and unambiguous terms of the governing statute and regulations, and would in effect unlawfully repeal the specific amendment passed by Congress to bring service in the Selected Reserve within the scope of 8 U.S.C. § 1440.

53.     DoD's new "active-duty service" policy and DoD's refusal to complete N-426s lack rationality, coherence, and consistency.  DoD's position is directly at odds with DHS's past and current interpretation of 8 U.S.C. § 1440, including DHS's final rulemaking published in the Federal Register.  And, DoD's position defies and disregards the instructions on the Form N-426 that DHS created for the express purpose of compliance with 8 U.S.C. § 1440.

54.     In fact, as Government counsel conceded to this Court on August 23, 2017, "the Department of Defense and USCIS disagree[] as to an interpretation of [8 U.S.C § 1440]."  In other words, DHS – the agency with exclusive authority to administer the naturalization laws and to adjudicate naturalization applications – does not agree with Defendants' action requiring service in an active-duty status as a prerequisite to any Form N-426 certification.  The fact that DoD's policies are impeding and disrupting the lawful naturalization process is even more extraordinary given Defendants' admission to this Court – in the Nio Action – that "it is the province of USCIS to interpret the Immigration and Nationality Act which is what is Title 8 and which leads to CFRs under Title 8."

55.     And, DoD's current policy is directly at odds with DoD's own past interpretation and practices with respect to honorable service certifications under Section 1440.  The reality is that DoD has certified the honorable service of hundreds, if not thousands, of MAVNI soldiers without any service in an active-duty status, including numerous health care professional MAVNIs over the years of the program and approximately 500 MAVNI soldiers, including "language" MAVNIs, in recent months.  DoD even has acknowledged, on multiple occasions, that a valid measure for a Selected Reserve MAVNI's eligibility for naturalization is two half-day drills (the equivalent of one day of drilling service).

56.     In short, DoD is engaging in a power play.  Contrary to law, DoD is interfering with and manipulating the naturalization process for Selected Reservists – a process over which it has no more than a ministerial duty to issue N-426 certifications.  For its part, DHS either lacks the wherewithal or the power to block DoD's gambit.  In the meantime, the lives and fates of MAVNI soldiers, including Plaintiffs, hang in the balance.

### Plaintiffs' Honorable Service and N-426 Requests

57.     Plaintiff Mahlon Kirwa enlisted in the Selected Reserve through the MAVNI program in December 2015.  Mr. Kirwa took his service oath on December 7, 2015.  Mr. Kirwa began drilling with the 414th Chemical Company in Orangeburg, South Carolina as a U.S. Army Private First Class (E-2) in March 2016 and has since participated in multiple Selected Reserve drill periods with his unit.

58.     In July 2017, Mr. Kirwa requested his commander to sign his Form N-426 so that he could submit his N-400 Application for Naturalization.  However, Mr. Kirwa's commander declined to sign the Form N-426, telling Mr. Kirwa that his service to date did not qualify for

issuance of a Form N-426.  The excuse that Mr. Kirwa's commander gave for denying his N-426 was that Mr. Kirwa had not attended at least 48 drill periods.

59.     Plaintiff Santhosh Meenhallimath enlisted in the Selected Reserve through the MAVNI program in February 2016.  Mr. Meenhallimath took his service oath on February 4, 2016.  Mr. Meenhallimath began drilling with the 353rd Transportation Company in Buffalo, Minnesota as a Specialist (E-4) in January 2017 and has since participated in multiple Selected Reserve drill periods with his unit.

60.     In April 2017, Mr. Meenhallimath requested an official in his unit to sign his Form N-426 so that he could submit his N-400 Application for Naturalization.  However, Mr. Meenhallimath's unit administrator refused to sign the Form N-426 stating that "I have found out that we cannot certify [a Form N-426] unless you are on Active Duty or have a DD214 (you will receive that after BCT/AIT)."  No one from Mr. Meenhallimath's unit has signed his N-426.

61.     Plaintiff Ashok Viswanathan enlisted in the Selected Reserve through the MAVNI program in June 2016.  Mr. Viswanathan took his service oath on June 24, 2016.  Mr. Viswanathan began serving with the 353rd Transportation Company in Buffalo, Minnesota as a Specialist (E-4) in August 2016 and has since participated in multiple Selected Reserve drill periods with his unit.

62.     In March 2017, Mr. Viswanathan filed his N-400 Application for Naturalization, attaching a Form N-426.  On March 31, 2017, USCIS responded to Mr. Viswanathan's submission with a Request for Evidence ("RFE") stating that USCIS was unable to fully process his application.  The RFE instructed him to "Take the N-426 to your personnel office, administrative unit, command, or human resources department where your service record can be verified and certified" and noted that "No Recruiter can Certify" the Form N-426.  The RFE

instructed Mr. Viswanathan to resubmit the Form N-426 within 30 days.  In April 2017, Mr. Viswanathan contacted his unit administrator regarding his Form N-426 certifying his honorable service.  Mr. Viswanathan's unit administrator responded with the following:  "I have found out that we cannot certify [a Form N-426] unless you are on Active Duty or have a DD214 (you will receive that after BCT/AIT)."  No one from Mr. Viswanathan's unit has signed his N-426.

**Defendants' Unlawful Conduct Has Caused, and Will Continue to Cause, Substantial and Irreparable Harm to Plaintiffs**

63.    Plaintiffs are suffering and will continue to suffer irreparable harm due to Defendants' actions.

64.    The right to acquire United States citizenship is a precious one.  The benefits of U.S. citizenship are priceless, and the consequences of a lost or unlawfully delayed opportunity to acquire citizenship are dire.  Depriving U.S. service members of their opportunity to become naturalized citizens – an opportunity earned through their honorable military service and guaranteed by statute – is an ongoing and mounting harm for which there is no recompense.

65.    Defendants' conduct is unlawfully depriving Plaintiffs and Class members of the opportunity to realize fundamental rights and benefits that come along with citizenship, including the right to vote, protection from deportation/removal proceedings, work or school authorization and benefits, the right to travel outside of this country and return to the United States, the ability to meet personal, family and professional obligations, and peace of mind regarding their legal status to remain in the United States.  This deprivation of citizenship opportunities continues with each passing day.  And every day of lost citizenship rights and benefits is a day that these Plaintiffs can never recover or be recompensed for losing.

66.    Without the ability to obtain a job, a driver's license, a U.S. passport (which has prevented certain Plaintiffs from visiting loved ones and attending important family events),

additional educational and professional opportunities, and the myriad other privileges that
naturalization would afford, these soldiers are suffering.  DoD's unlawful refusal to certify
Plaintiffs' honorable service has led to financial and other distress, hardship, and uncertainty.
Simply put, Plaintiffs cannot plan for the future.

67.     Further, Plaintiffs' lawful immigration status has been jeopardized by Defendants'
conduct.  Enlistment in the military shows "immigrant intent" that jeopardizes any non-
immigrant visa status.  For example, DHS officials have stated that, in the agency's view,
MAVNI soldiers who entered the United States on F or M non-immigrant visas are subject to
removal because of their enlistment in the U.S. Army.  According to the agency, these U.S.
Army soldiers remain "lawfully presen[t]" in the United States only "at the discretion of the
agency" and only "for so long as DHS continues to forbear" removal proceeding against them.

68.     And, the DoD has told these soldiers the following: "If you are discharged from
the Army before you become a citizen, you may no longer have a valid immigration status.  For
example, if you are on an H1B worker visa prior to joining the Army and are later discharged
without citizenship, you will have no legal status."

69.     Furthermore, current DHS guidance relating to F and M non-immigrant visas
provides that if a MAVNI Selected Reserve soldier receives "compensation during Reserve duty,
this marks the beginning of employment and the [Designated School Officials] must terminate
the student [Student and Exchange Visitor Information System ("SEVIS")] record."  While DHS
officials state that, at least for now, the agency "will not enforce the requirement that designated
school officials terminate the [SEVIS] record of a student solely because he or she accepts
compensation for participating in Reserve duty," the "requirement" still exists and this
representation affords no comfort whatsoever to MAVNI soldiers whose enrollment already has

been terminated or will be terminated by school officials in compliance with this DHS requirement.

70.     By withholding certification of honorable service for Plaintiffs and similarly-situated soldiers, DoD is not even allowing these soldiers the modicum of "lawful presence" protection that may accompany a pending naturalization application.

71.     Further, the new uncertainty associated with their military careers, and concomitantly their legal status, is causing anguish and is particularly unconscionable given that each Plaintiff is serving during a period of armed conflict and has sworn an oath to protect and defend the United States.

72.     Finally, any loss of the opportunity to become U.S. citizens on the part of Plaintiffs and the members of the Class, after already having volunteered to serve in the United States military, could subject these individuals to extreme peril.  These individuals would be subject to deportation to countries of origin, where, for some, they could face detention, interrogation, prosecution, and/or imprisonment because of their decision to enlist in the U.S. Army and swear their allegiance to the United States and the Constitution.

## CLASS ACTION ALLEGATIONS

73.     The named Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.  The named Plaintiffs seek to represent the below-described Class:

74.     Class:  All individuals who: (i) have enlisted in the U.S. military through the MAVNI program; (ii) have served in the Selected Reserve; and (iii) have not received a completed N-426 Form from the military.

75.     The members of Plaintiffs' Class warrant class action treatment because they fulfill the certifying requirements under Rule 23(a) of the Federal Rules of Civil Procedure. While the exact number of Class members is unknown to Plaintiffs at this time, recent DoD memoranda – including a May 19, 2017 "Action Memo" signed by DoD Under Secretaries, a July 27, 2017 memorandum from the Acting Secretary of the Army, and sworn statements by DoD representatives in the Nio Action – indicate that the proposed Class would consist of approximately 2,000 members.

76.     The proposed Class meets the numerosity requirement of Rule 23(a)(1) because the members of the Class are so numerous that joinder of all members is impractical.

77.     The proposed Class meets the commonality requirement of Rule 23(a)(2) because there are questions of law and fact common to the Class, including, for example, whether DoD has a mandatory duty to complete N-426 Forms and whether DoD's "active-duty service" requirement for certification of a Form N-426 is contrary to law.

78.     The proposed Class meets the typicality requirement of Rule 23(a)(3) because the claims of the named Plaintiffs are typical of the claims of each of the Class members.  Class members and Plaintiffs similarly are affected by Defendants' wrongful conduct in violation of federal law, including 8 U.S.C. § 1440, that is described herein.

79.     The named Plaintiffs will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4) because their interests are identical to those of the other members of the Class.  Fair and adequate protection of the interests of the Class will be further ensured because the named Plaintiffs are represented by competent legal counsel who are experienced in federal litigation, are undertaking representation on a pro bono basis, and have adequate resources and commitment to represent the Class as a whole.

80.     Furthermore, as contemplated by Rule 23(b)(1), if the individual members of the Class were to bring separate suits to address Defendants' policies, practices, and actions and inactions, Defendants may address the cases of the named Plaintiffs but ignore the concerns of the remaining Class members, thereby exacerbating Defendants' violations of the law. Resolving this matter as a class action also would serve the Court's interest in judicial economy by avoiding overburdening the courts with individual lawsuits brought by each of the many enlistees recruited through the MAVNI program whose Form N-426 honorable service certifications are being withheld subject to DoD's unlawful active-duty service requirement.

81.     Alternatively, this case qualifies for class action treatment under Rule 23(b)(2) because Plaintiffs seek final injunctive and declaratory relief.  This relief is appropriate for the whole Class as Defendants' actions and/or refusals to act apply generally to the Class as a whole.

## CLAIMS FOR RELIEF

### Count I: Declaratory Judgment

82.     Plaintiffs re-allege paragraphs one through eighty-one as if fully set forth herein.

83.     28 U.S.C. § 2201 authorizes a court, "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading" to "declare the rights and other legal relations of any interested party seeking such declaration . . . ."

84.     8 U.S.C. § 1440 establishes a clear, limited, and purely ministerial role for DoD in the naturalization process.  DoD's role is to verify, by way of Form N-426, whether a soldier is or is not serving honorably based on that soldier's existing service record.

85.     8 U.S.C. § 1440, the implementing regulations promulgated thereunder, and the final rules published in the Federal Register further provide that soldiers with honorable service *either* as a member of the Selected Reserve of the Ready Reserve *or* in an active-duty status are

eligible for naturalization under Section 1440.  Service in an active-duty status is not required.

Contrary to the express language of the statute and regulations, DoD has adopted a final policy

precluding the certification of honorable service for members serving in the Selected Reserve

until such service members serve in an active-duty status, and has applied that policy to Plaintiffs

(and to the Class) to deny them the honorable service certifications to which they are entitled

under the statute.

86.     Accordingly, Plaintiffs seek declaratory judgment that:

(i)     DoD may not withhold or unreasonably delay completion and execution of
Form N-426 service certifications for Selected Reserve MAVNI soldiers;

(ii)    For purposes of 8 U.S.C. § 1440, one day of Selected Reserve service is
sufficient;

(iii)   DoD may not refuse to certify honorable service for Selected Reserve
MAVNI soldiers on the basis that service in an active-duty status is
necessary for naturalization under 8 U.S.C. § 1440; and

(iv)    Unless the soldier's existing service record reflects conduct that
disqualifies that service from being designated honorable – under the
recognized standard applicable to all soldiers regardless of immigration
status, DoD may not withhold an honorable service certification for any
Selected Reserve MAVNI soldier seeking naturalization.

**<u>Count II: Preliminary and Permanent Injunctive Relief</u>**

87.     Plaintiffs re-allege paragraphs one through eighty-six as if fully set forth herein.

88.     Defendants unlawfully and improperly have imposed an active-duty service

requirement for certification of Plaintiffs' honorable service.  And, Defendants unlawfully are

withholding MAVNI service certifications (N-426s).  Defendants' actions interfere with and prevent the submission, processing, and adjudication of Plaintiffs' naturalization applications under 8 U.S.C. § 1440.

89.     Plaintiffs have been, and will continue to be, substantially and irreparably harmed by Defendants' unlawful and improper actions, for which they have no adequate remedy at law. Under the facts and circumstances of this case, the balance of the equities clearly favors Plaintiffs, and injunctive relief is in the public interest.

90.     Plaintiffs seek preliminary injunctive relief against Defendants:

(i)     to place and maintain the parties in the pre-dispute status quo;

(ii)    to preliminarily restrain Defendants from refusing to sign and issue Form N-426s to members of the Selected Reserve;

(iii)   to preliminarily set aside Defendants' policy requiring service in an active-duty status for certification of honorable service under 8 U.S.C. § 1440(a);

(iv)    to preliminarily restrain Defendants from refusing to certify honorable service to members of the Selected Reserve, except as related to the conduct of an individual Plaintiff or Class member as reflected in that soldier's service record and based on sufficient grounds generally applicable to all members of the military;

(v)     to preliminarily restrain Defendants from discharging or separating Plaintiffs or members of the Class pending completion of their N-426 Forms and processing of their naturalization applications, except as related to the conduct of an individual soldier and based on sufficient grounds

generally applicable to members of the military for discharge from service; and

(vi)     to compel Defendants to provide weekly reports to the Court, Plaintiffs, and the Class regarding (a) the status of Plaintiffs' and Class members' honorable service certifications until such certifications are issued, and (b) any plans to discharge or separate the Plaintiffs or Class members from the military pending issuance of their N-426 Forms and processing of their naturalization applications.

91.     Plaintiffs seek permanent injunctive relief against Defendants:

(i)      to restrain Defendants from refusing to sign and issue Form N-426s to members of the Selected Reserve;

(ii)     to set aside Defendants' policy requiring service in an active-duty status for certification of honorable service under 8 U.S.C. § 1440(a);

(iii)    to restrain Defendants from refusing to certify honorable service to members of the Selected Reserve, except as related to the conduct of an individual soldier as reflected in that soldier's service record and based on sufficient grounds generally applicable to all members of the military;

(iv)     to restrain Defendants from discharging or separating Plaintiffs or members of the Class pending completion of their N-426 Forms and processing of their naturalization applications, except as related to the conduct of an individual soldier and based on sufficient grounds generally applicable to members of the military for discharge from service; and

(v)      to compel Defendants to provide weekly reports to the Court, Plaintiffs, and the Class regarding (a) the status of Plaintiffs' and Class members' honorable service certifications until such certifications are issued, and (b) any plans to discharge or separate the Plaintiffs or Class members from the military pending issuance of their N-426 Forms and processing of their naturalization applications.

92.    Plaintiffs further seek preliminary and permanent injunctive relief against the Defendants enjoining them from taking any retaliatory actions against Plaintiffs and the Class.

### Count III: Relief Pursuant to the Administrative Procedure Act

93.    Plaintiffs re-allege paragraphs one through ninety-two as if fully set forth herein.

94.    5 U.S.C. § 706(1) authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed."  Reviewable agency action includes an agency's failure to act.  Defendants unlawfully have withheld and/or unreasonably delayed the issuance of Form N-426s and honorable service certifications to Plaintiffs and the Class contrary to the plain language of applicable law, including 8 U.S.C. § 1440.

95.    Plaintiffs have a clear right to receive honorable service certifications for naturalization purposes pursuant to 8 U.S.C. § 1440 based on their current service and based on the current record.  Defendants have interfered with that right and the only adequate remedy is to order Defendants to resume certification of Plaintiffs' honorable service solely in accordance with existing criteria, law, and regulations.

96.    Accordingly, Plaintiffs seek an order from the Court pursuant to 5 U.S.C. § 706(1) compelling Defendants to comply with their statutory obligations pursuant to 8 U.S.C.

§ 1440 to issue Form N-426s certifying the honorable service of Plaintiffs and members of the Class.

97.     5 U.S.C. § 706(2) authorizes a court to hold unlawful and set aside final agency action found to be arbitrary, capricious, an abuse of discretion (*e.g.*, irrational), or otherwise not in accordance with law, or in excess of statutory jurisdiction or authority.

98.     Defendants have implemented a policy withholding the issuance of N-426s and precluding the certification of honorable service under Section 1440 for members serving in the Selected Reserve until such service members serve in an active-duty status, and Defendants have applied that policy to Plaintiffs and the Class to deny them the honorable service certifications to which they are entitled and eligible under the law.  Defendants' policy is contrary to the plain language of the statute, implementing regulations, and final rulemaking, which unambiguously provide that service members with honorable service *either* as a member of the Selected Reserve of the Ready Reserve *or* in an active-duty status are eligible for naturalization.  Defendants' policy also is directly contrary to the decision by Congress to amend Section 1440 to broaden the statute's scope specifically to include service by members of the Selected Reserve.  DoD's policy and practice exceeds its statutory authority.  And, this policy of withholding the N-426s and precluding certification of honorable service absent active-duty status is inconsistent with DoD's own past practice with respect to numerous other Selected Reserve MAVNIs.

99.     Accordingly, Plaintiffs seek an order: (i) holding unlawful and setting aside Defendants' policy refusing issuance of N-426s and precluding the certification of honorable service for members of the Selected Reserve who have not served in an active-duty status; (ii) declaring such policy unlawful; (iii) enjoining Defendants from withholding issuance of N-426s and from refusing to certify honorable service except as related to the conduct of an

individual soldier as reflected in that soldier's service record and based on sufficient grounds generally applicable to all members of the military; and (iv) enjoining Defendants from applying the policy to Plaintiffs and the Class.

## Count IV: Mandamus

100.    Plaintiffs re-allege paragraphs one through ninety-nine as if fully set forth herein.

101.    28 U.S.C. § 1361 authorizes a court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" if the plaintiff can demonstrate that: (1) the plaintiff seeking mandamus has a clear right to the relief requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other adequate remedy is available.

102.    By virtue of their service in the Selected Reserve and their stated intention to apply for naturalization pursuant to 8 U.S.C. § 1440, Plaintiffs have the right and need to obtain from Defendants a certification of their honorable service, via Form N-426.

103.    Pursuant to 8 U.S.C. § 1440, Defendants have a mandatory duty and obligation to perform the ministerial function of verifying Plaintiffs' service status from their existing service records and certifying – via Form N-426 – Plaintiffs' honorable service.

104.    Defendants have refused to perform this limited task and have implemented policies thwarting and preventing the issuance of N-426 certification to Plaintiffs and the Class.

105.    Accordingly, Plaintiffs seek issuance of a writ of mandamus compelling Defendants to comply with their ministerial obligations pursuant to 8 U.S.C. § 1440 to certify the honorable service of Plaintiffs and the Class.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and the Class, respectfully request that this

Court:

1. Assume jurisdiction over this action;

2. Enter the declaratory judgment requested in Count I of this Complaint;

3. Grant the preliminary and permanent injunctive relief requested in Count II of this

   Complaint;

4. Grant the relief requested pursuant to the APA (Count III of this Complaint);

5. Issue the mandamus requested in Count IV of this Complaint;

6. Award Plaintiffs and the Class reasonable costs and attorneys' fees, including

   under the Equal Access to Justice Act; and

7. Award such further relief as the Court deems just or appropriate.

Respectfully submitted this 1st day of September 2017.


                    /s/ Joseph J. LoBue

Joseph J. LoBue (D.C. Bar No. 484097)
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Neaha P. Raol (D.C. Bar No. 1005816)
Webster R. M. Beary (D.C. Bar No. 1041653)
Shaun A. Gates (D.C. Bar No. 1034196)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: joseph.lobue@friedfrank.com
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*