**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MAHLON KIRWA, et al. | ) | |
| | ) | |
| | ) | |
| on behalf of themselves and those similarly situated, | ) | **No. 1:17-cv-01793-ESH** |
| | ) | |
| PLAINTIFFS, | ) | **AMENDED COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF DEFENSE, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## COMPLAINT

1.      Plaintiffs bring this action on behalf of themselves and similarly-situated United States soldiers who are the victims of a misguided and unlawful attempt to deprive them of their right to seek United States citizenship.  As non-citizen soldiers serving honorably during wartime, Plaintiffs have an absolute statutory right to apply to become naturalized U.S. citizens. But, until ordered to do so by the Court via a preliminary injunction entered in this case on October 25, 2017, Defendants refused to certify their naturalization application eligibility as required by law, leaving these soldiers to languish in immigration limbo, notwithstanding their ongoing military service to this Nation.  Defendants' actions are contrary to law and a disservice to these Plaintiff-soldiers.

2.     Defendants recruited and enlisted each Plaintiff into the United States Army under the Military Accessions Vital to the National Interest ("MAVNI") program, under which non-U.S. citizens with critical language and/or medical skills deemed by the Department of Defense ("DoD") to be "vital to the national interest" serve in the United States Armed Forces. DoD recruits individuals into this "vital" program, in part, by promising enlistees a "fast track" to U.S. citizenship.  Now, without authorization or justification to do so, Defendants have broken that promise and are making a mockery of the expedited path to citizenship that Congress prescribed through policies that unlawfully block, interfere with, and delay naturalization for these honorably serving soldiers.

3.     Each MAVNI Plaintiff here is serving in the Selected Reserve of the Ready Reserve ("Selected Reserve") and is entitled to apply for naturalization under federal law, including 8 U.S.C. § 1440.  An initial step in the naturalization application process is the certification of Plaintiffs' honorable service in the Selected Reserve.  The Department of Homeland Security ("DHS"), which is the federal agency responsible for processing and adjudicating all naturalization applications, requires these certifications to be made via DHS Form N-426, a form specifically designated for this purpose.  Completing the N-426 certification is a ministerial task.  The service member's military branch simply indicates – by checking a box "yes" or "no" – whether the soldier (*e.g.*, a Plaintiff or a class member) is serving honorably based on the existing military record for that soldier.  The military has performed this ministerial task thousands of times before without complication or ordeal, including approximately 500 times in recent months alone.

4.     Due to their status as soldiers serving in the Selected Reserve, Plaintiffs and the class satisfy the threshold legal condition necessary to obtain the Form N-426 certifications.  The

federal statute enabling naturalization for these soldiers, 8 U.S.C. § 1440, is clear and

unambiguous:

> [*a]ny person who*, while an alien or a noncitizen national of the
> United States, *has served honorably as a member of the Selected
> Reserve of the Ready Reserve* or in an active-duty status in the
> military, air, or naval forces of the United States . . . during any . . .
> period which the President by Executive order shall designate as a
> period in which Armed Forces of the United States are or were
> engaged in military operations involving armed conflict . . . *may be
> naturalized as provided in this section* . . . .

8 U.S.C. § 1440(a) (emphasis added).

5.      Notwithstanding this express and well-established federal law, Defendants have

implemented new policies that withhold the issuance of N-426s to statutorily eligible soldiers

until DoD has determined – for its own purposes – that these men and women comply with

certain DoD-imposed naturalization criteria.  Through these policies, DoD has seized control

over naturalizations under 8 U.S.C. § 1440 and has assigned to itself a naturalization

gate-keeping role that it has no power or authority to assume.

6.      One such policy was issued on August 17, 2017 ("DoD's August N-426 Policy"),

which instructed DoD Reserve commanders to cease issuing N-426s to Selected Reservists until

the service member had served in an active duty status.

7.      On October 13, 2017, in response to this and related litigation, DoD issued its

most recent N-426 policy ("New DoD N-426 Policy").  Without withdrawing DoD's August

N-426 Policy, the New DoD N-426 Policy specifically imposed pre-conditions to DoD's

issuance of N-426s, including an active-duty service requirement, a waiting period requirement,

a minimum period of service requirement, a physical presence requirement, a geographic

location requirement, and other conditions that are contrary to law.

8.      The New DoD N-426 Policy expressly forbids the issuance of N-426s until Selected Reserve soldiers satisfy specific conditions that ***DoD*** deems necessary to make the soldier worthy of naturalization.  These conditions exceed DoD's ministerial duties and functions in the naturalization process pursuant to 8 U.S.C. § 1440 – which is limited to the duty to certify whether these soldiers have served honorably – and are intended to prevent Plaintiffs and the class from applying for naturalization until DoD deems them fit to do so.  And Defendants implemented these policies in blatant disregard for the immense suffering and mounting harm that their actions have caused to soldiers under their command.

9.      On October 25, 2017, the Court granted Plaintiffs' Motion for a Preliminary Injunction and issued an order (amended on October 27, 2017) enjoining Defendants from enforcing aspects of the New DoD N-426 Policy and requiring Defendants to use their "best efforts" to complete and provide to Plaintiffs and the class N-426 certifications within two business days of receipt.  The Court also provisionally certified the class.  As of the date of this Amended Complaint, Defendants were not in compliance with the preliminary injunction.

10.      Defendants' policy of denying N-426 certifications to Plaintiffs and other Selected Reservists stands in stark contrast to past practices.  Until recently – *i.e.*, before DoD implemented these policies and before it began otherwise interfering with the naturalization process for MAVNI applicants – soldiers in Plaintiffs' position sought (and obtained) naturalization through a well-established and orderly process that was consistent with the law:

**STEP ONE**:      MAVNI soldiers obtained N-426 certifications of their honorable service from the military and submitted them to DHS with their naturalization applications,

**STEP TWO**:      DHS expedited the naturalization paperwork, and

> **STEP THREE**:   DHS adjudicated the applications using the same
> fundamental citizenship factors that apply to all persons
> seeking to be naturalized.

11.     Thousands of Selected Reservists followed these steps in past years, obtaining

their N-426 honorable service certifications from DoD with no fanfare – and often in minutes

after as little as one day of service – and submitting them with their naturalization applications to

DHS.  With no notice to Plaintiffs and the class, who relied on the promise of an expedited

naturalization adjudication and whose enlistment contracts require them to apply for citizenship

promptly after enlistment, that once swift, orderly, lawful, and straightforward process came to a

screeching halt in late 2016 and has morphed into a process characterized by DoD disarray,

delay, dishonor, and a dereliction of duty.

12.     In a related action pending in this Court, *Nio, et al. v. United States Department of

Homeland Security, et al.*, No. 17-cv-998-ESH (D.D.C.) (the "Nio Action"), other MAVNI

soldiers (who had obtained N-426 certifications from DoD based on their Selected Reserve

service) are challenging, among other things, unlawful actions by DoD and others affecting

STEP TWO and STEP THREE described above.  This action focuses on STEP ONE – namely,

the certification of honorable service itself by DoD.  Without that certification – the ministerial

action which DoD's policy withholds – Plaintiffs and similarly-situated soldiers who are serving

honorably in the military cannot file for naturalization and thus advance to STEP TWO.

13.     Defendants have no legal authority over the implementation or enforcement of the

immigration and naturalization laws of the United States, or over the adjudication of

naturalization applications.  Congress, which has the constitutional obligation to establish a

Uniform Rule of Naturalization, enacted laws assigning naturalization duties solely to DHS.

Yet, Defendants have inserted themselves into the naturalization process by implementing

policies that block and impede the issuance of the N-426 certifications that these soldiers need to pursue naturalization and that they are entitled to receive as a matter of law.

14.     Defendants' refusal to furnish certifications to these Selected Reservists is alarming, as their position brazenly violates federal law, regulations, and other promulgated rules.  In actuality, Defendants' N-426 policies are nothing more than a thinly-veiled effort – albeit poorly-reasoned and litigation driven – to deny U.S. citizenship to certain MAVNI soldiers because DoD's views about the MAVNI program have changed over time.

## RELATED LAWSUIT

15.     In the Nio Action, commenced on May 24, 2017, ten individuals (the "Nio Plaintiffs") brought a class action suit against DoD, DHS, United States Citizenship and Immigration Services ("USCIS"), and others (collectively, the "Nio Defendants") alleging that the Nio Defendants were improperly depriving the Nio Plaintiffs of their lawful opportunity and right to become naturalized United States citizens.  Specifically, the Nio Plaintiffs allege that the Nio Defendants have impeded and delayed the adjudication of their naturalization applications by holding their applications and/or imposing on them additional citizenship qualifications and criteria that have no basis in law, particularly "enhanced DoD security checks," and/or revoking or threatening to revoke the N-426 honorable service certifications previously issued to the Nio Plaintiffs and the Nio class ("Nio Class"), including pursuant to the New DoD N-426 Policy. The Nio Action currently is pending before this Court.  On October 27, 2017, the Court in the Nio Action issued a preliminary injunction enjoining aspects of the New DoD N-426 Policy.

16.     This Amended Complaint involves common issues of fact and arises out of the same core events as the Nio Action.  For example, both lawsuits involve DoD's unlawful interference in the naturalization process of Selected Reservists recruited through the MAVNI

program, including through the New DoD N-426 Policy.  If Plaintiffs and the class obtain the

final relief they seek here and receive the honorable service certifications to which they are

entitled, allowing them to apply for naturalization, they will be placed into the same

circumstances as the Nio Class and should fall within the scope of the Nio Class in the Nio

Action.  This action also involves the same issues of injury and harm to the respective plaintiffs

and classes.  In both cases, applications for naturalization for MAVNI soldiers are being delayed,

resulting in similar or identical injuries, harms, and difficulties.

## JURISDICTION

17.     This action arises under section 329 of the Immigration and Nationality Act of

1952 ("INA"), codified at 8 U.S.C. § 1440, and the United States Constitution.  This Court has

jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and the APA, 5 U.S.C.

§ 701 et seq.

## VENUE

18.     Venue is proper in the Court under 28 U.S.C. § 1391(e) because Defendant Mattis

is an officer of the United States acting in his official capacities, and the United States

Department of Defense is present in this district.  Further, Defendant Mattis performs official

duties in Washington, D.C.

## PARTIES

19.     Plaintiff Mahlon Kirwa resides in Orangeburg, South Carolina.  Mr. Kirwa

enlisted in the Selected Reserve through the MAVNI program in December 2015 and serves with

the U.S. Army's 414th Chemical Company in Orangeburg, South Carolina.

20.     Plaintiff Santhosh Meenhallimath resides in Eden Prairie, Minnesota.  Mr. Meenhallimath enlisted in the Selected Reserve through the MAVNI program in February 2016 and serves with the U.S. Army's 353rd Transportation Company in Buffalo, Minnesota.

21.     Plaintiff Ashok Viswanathan resides in Eden Prairie, Minnesota.  Mr. Viswanathan enlisted in the Selected Reserve through the MAVNI program in June 2016 and serves with the U.S. Army's 353rd Transportation Company in Buffalo, Minnesota.

22.     Defendant United States Department of Defense is responsible for the overall administration of military policy, which includes the MAVNI program, and issued the N-426 policies that are among the issues in this Amended Complaint.

23.     Defendant James Mattis is sued in his official capacity as Secretary of Defense of the United States Department of Defense.  As Secretary of Defense, Gen. Mattis is responsible for the overall administration of DoD, which includes the MAVNI program.

## BACKGROUND AND FACTS

### The MAVNI Program and Plaintiffs' Service Commitments

24.     Typically, U.S. Armed Forces enlistees must meet U.S. citizenship or permanent residence requirements.  10 U.S.C. § 504(b).  However, 10 U.S.C. § 504(b)(2) authorizes the Secretary of Defense and the Secretaries of the military service departments to enlist certain non-U.S. citizens and non-permanent residents if enlistment of such individuals is "vital to the national interest."  Under this authority, DoD initiated the MAVNI program in 2008, and the program has continued to operate through the present, with brief interruptions and enlistment suspension periods.  According to a DoD official, DoD has suspended new MAVNI enlistments since approximately June 2016.

25.     The MAVNI program is designed to attract two types of recruits into the military: (a) health care professionals and (b) individuals who possess critical foreign language skills. DoD officials acknowledge that soldiers with these skills "are necessary to sustain effective military operations."

26.     Under MAVNI, DoD encouraged qualified individuals to enlist, touting the opportunity of an "expedited" path to U.S. citizenship.  DoD contractually mandated that MAVNI enlistees – including Plaintiffs – apply for citizenship "as soon as the [service branch (*e.g.*, the Army)] has certified [the MAVNI soldier's] honorable service."  This citizenship opportunity was a powerful enticement to Plaintiffs and other such qualified individuals who contemplated MAVNI enlistment.

27.     Plaintiffs are soldiers who possess the skills that DoD has deemed "vital to the national interest."  They enlisted under the MAVNI program, signed MAVNI enlistment contracts, and are serving honorably in the Selected Reserve.  Each Plaintiff has taken the military service oath and has a military rank.  Each Plaintiff's enlistment contract obligates him to eight years of service in the Army Reserve, six years of which must be served in the Selected Reserve.  Each Plaintiff is assigned to a U.S. Army Selected Reserve unit, and each has served with his unit by participating in multiple Selected Reserve drill periods.

28.     The commitment that each Plaintiff has undertaken to serve as a soldier in the U.S. Army Reserve is serious and substantial.  As the standard MAVNI Army Reserve enlistment contract states, an agreement to enlist "is more than an employment agreement.  It effects a change in status from civilian to military member of the Armed Forces."  As such, per the Enlistment/Reenlistment Document Armed Forces of the United States (DD Form 4/1), soldiers (a) are "[r]equired to obey all lawful orders and perform all assigned duties," (b) are

"[s]ubject to the military justice system" and, among other things, "may be tried by military courts-martial," (c) may be "[r]equired upon order to serve in combat or other hazardous situations," and (d) must otherwise "meet acceptable military standards" such that any failure to meet their service obligations as Selected Reservists can result in demotion and/or discharge from the service under other than honorable conditions.

29. As members of the U.S. military, Plaintiffs may be required to compromise individual liberties that are considered fundamental in ordinary civilian American society. As the enlistment contracts provide, a service member's freedom of religious expression may be curtailed: "I understand that the Army cannot guarantee accommodation of religious practices, and that religious accommodations may be modified or revoked based on changes in military necessity." A service member's freedom of speech, expression, and association also may be curtailed. Consequently, prior to enlistment, the Army provides recruits with USMEPCOM Form 601-23-4 – "Restrictions on Personal Conduct in the Armed Forces" – which specifies that military service entails behavioral limitations not applicable to civilians in America:

> Military life is fundamentally different from civilian life. The military has its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society. These are necessary because military units and personnel must maintain high standards for morale, good order and discipline, and unit cohesion that are essential for combat effectiveness.

30. As a member of the Selected Reserve, each soldier "may, at any time and without [his/her] consent, be ordered to active duty to complete a total of 24 months of active duty." In times of war or national emergency declared by Congress, these soldiers may, without their consent, "be ordered to serve on active duty for the entire period of the war or emergency and for six (6) months after its end." As members of the Selected Reserve, these soldiers may, without

their consent, be ordered to 365 days of consecutive active duty whenever "the President determines that it is necessary to augment the active forces for any operational mission or for certain emergencies."

## The Applicable Statutory and Regulatory Framework

31.     The Constitution vests Congress the power to establish a uniform Rule of Naturalization.  U.S. Constitution, Art. 1, Sect. 8, Cl. 4.  One naturalization statute enacted by Congress pursuant to its Constitutional authority is the INA.  The provision of the INA applicable in this case is simple and clear.  8 U.S.C. § 1440(a), provides that:

> [a]ny person who, while an alien or a noncitizen national of the United States, has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States . . . during any . . . period which the President by Executive order shall designate as a period in which Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force[1] . . . may be naturalized as provided in this section . . . .

32.     The key language here is that certain non-U.S. citizens qualify for naturalization under this section with honorable service "as a member of the Selected Reserve of the Ready Reserve **or** in an active-duty status."  8 U.S.C. § 1440(a) (emphasis added).  This disjunctive language of the statute is clear and unequivocal: honorable service in the Selected Reserve is an independent basis for naturalization.  Stated differently, naturalization under this statute is not dependent on an individual performing active-duty service.

33.     The history of the statute reinforces the separate and independent import of these two clauses.  While the prior version of the statute limited naturalization to those serving in an

---

[1] On July 3, 2002, the President determined that the military is engaged in armed conflict.  Exec. Order No. 13269, 67 Fed. Reg. 45,287 (July 3, 2002).  Executive Order No. 13269 has remained in effect through the present.

active-duty status, the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, 117 Stat. 1392, 1693 (2003) amended the statute to add those serving as members of the Selected Reserve.  Thus, Congress made clear that naturalization is available based on either service as a member of the Selected Reserve *or* service in active-duty status.

34.    DHS, which administers the naturalization laws and adjudicates naturalization applications under Section 1440(a), reads and applies this provision in the same way.  DHS's final rulemaking for this statute confirms that it was amended in 2003 to include "not only [] individuals who served honorably in an active duty status . . . but also [] individuals who have served honorably as members of the Selected Reserve. . . ."  75 Fed. Reg. 2785-01 (2010) provides (with emphasis added):

> [T]his final rule extends eligibility for naturalization to include those individuals who have served honorably in the U.S. Armed Forces *either* in an active duty status *or* as a member of the Selected Reserve of the Ready Reserve. See revised 8 CFR 329.2(a).  In addition, this rule amends the title of 8 CFR part 329 to include service in the Selected Reserve of the Ready Reserve.  Currently, the title only lists active duty service as a basis for naturalization where service occurred during specified periods of hostilities.

Like Section 1440, the disjunctive "either . . . or" is unequivocal.

35.    The regulations implementing 8 U.S.C. § 1440 are located at 8 C.F.R. Part 329, entitled "SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: PERSONS WITH ACTIVE DUTY OR CERTAIN READY RESERVE SERVICE IN THE UNITED STATES ARMED FORCES DURING SPECIFIED PERIODS OF HOSTILITIES."  Section 329.2 provides that a service member is eligible for naturalization under 8 U.S.C. § 1440 upon establishing that he or she "[h]as served honorably in the Armed Forces of the United States as a member of the Selected Reserve of the Ready Reserve or in an active duty status in the Armed Forces of the United States during . . . [a]ny other period as may be designated by the President

12

in an Executive Order pursuant to section 329(a) of the Act . . . ."  Like the statute, the disjunctive language of DHS's legislative rules under Section 329.2(a) is clear and direct. Service as a member of the Selected Reserve and service in an active-duty status provide alternative paths to citizenship under Section 1440.

36.     Volume 12 of the USCIS Policy Manual, the USCIS's centralized repository for its immigration policies, explains the laws and policies that govern United States citizenship and naturalization, and further confirms that service in the Selected Reserve counts as qualifying service under Section 1440.  USCIS Policy Manual Volume 12, Part I, Chapter 3, current as of July 26, 2017 ("Members of the U.S. armed forces who serve honorably for any period of time during specifically designated periods of hostilities may be eligible to naturalize.  One day of qualifying service is sufficient in establishing eligibility.").

37.     Thus, just as one day of active-duty service is sufficient for naturalization eligibility, so is one day of Selected Reserve service.  On July 7, 2017, DHS admitted this directly in sworn testimony to this Court (emphasis added):  "As members of the U.S. Armed Forces during a period of hostilities, MAVNI recruits are eligible to apply for naturalization under section 329(a), 8 U.S.C. § 1440, *once they join the military*."

38.     DHS regulations also confirm that the service requirement can be satisfied either through any current service that is honorable or a separation from military service under honorable conditions: "*[h]onorable service and separation* means service and separation from service which the executive department under which the applicant served determines to be honorable . . . ."  8 C.F.R. 329.1 (emphasis in original).

39.     The N-426 Form is the official form established by USCIS for certification of a soldier's "honorable service" status.  The form – entitled "USCIS Form N-426: Request for

Certification of Military or Naval Service" – reflects the statutory option of such service either via Selected Reserve membership or active-duty status, does not indicate any minimum period of service for naturalization eligibility, and reflects that current or past service is qualifying.

40.     The service department "under which the applicant served or is serving" certifies the member's honorable service to USCIS officials.  8 C.F.R. 329.4.  DoD previously had shown no confusion (at least until the unlawful actions complained of herein) regarding the ability to naturalize based on service in the Selected Reserve.  In fact, the Army recited the statutory framework for citizenship in the standard enlistment contract:

> 3.     I understand that I am enlisting under a federal law that allows the Secretary of the Army to authorize the enlistment of certain non-citizens of the United States (10 U.S.C. 504(b)(2)).  I also understand that I am enlisting during a period of time in which any alien who serves honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air or naval forces of the United States may apply for United States Citizenship (8 U.S.C. 1440). . . .

> 4.     In exchange for being permitted to enlist in the Army, I agree to apply for U.S. citizenship as soon as the Army has certified my honorable service.  I understand that the Army does not grant U.S. citizenship, and the Army does not guarantee that my application for U.S. citizenship will be approved.

**Defendants Are Withholding Their Mandatory and Ministerial Duties**

41.     Under federal law, the authority to administer and enforce all laws relating to the immigration and naturalization of aliens is vested in DHS and its component agency, USCIS. Defendants have no legal authority to implement or enforce the immigration and/or naturalization laws of the United States.

42.     By statute, Defendants' role in the naturalization of MAVNIs is compulsory and ministerial.  Indeed, Defendants admitted to this Court in the Nio Action that "DoD serves a ministerial role in determining if an individual is serving honorably[.]"  The service member's

executive department (*i.e.,* service branch) merely certifies to DHS – the agency responsible for adjudicating and conferring citizenship – the service member's honorable service.  DHS created and requires the use of Form N-426 for this purpose.

43.     Form N-426 instructs the military to consult a soldier's existing service records and, on that basis, ***designate "yes" or "no" as to whether the soldier's service is "honorable***." Because the form can be completed through a simple service record look-up, USCIS specifically authorizes that designation to be certified by "personnel office, administrative unit, command, or human resources department" personnel.

44.     The choice on the form is binary.  For service members eligible to apply for naturalization under 8 U.S.C. § 1440, either the soldier is serving honorably or not, based on the individual's service record.  Neither the form nor the statute authorizes DoD to refuse to make that choice or to otherwise withhold making the designation for Selected Reserve soldiers who have not yet served in an active-duty status, have not served for minimum periods, have not been resident in the United States for long enough, have not passed a Tier 3 or Tier 5 security investigation, have not received a so-called military suitability (or other military-specific) determination, have not served in a certain "capacity," or for any other unlawful reason.

45.     Yet, in disregard and defiance of the relevant statutes and implementing regulations, Defendants are withholding issuance of N-426 certifications to Plaintiffs and similarly-situated MAVNI soldiers and thereby impeding, depriving, and preventing the exercise of their statutory right to seek naturalization.

**Defendants' Unlawful N-426 Withholding and Unlawful "Active-Duty Status" Policy**

46.     Plaintiffs have fulfilled their obligations under the law and their enlistment contracts.  They possess the language and/or medical skills deemed "vital" by DoD.  They

enlisted as members of the Selected Reserve – with military ranks – during a period of armed conflict, thereby promoting a "vital national interest." They are serving in the Selected Reserves, including by attending drills with their units, and are doing so honorably.

47.     Defendants, contrary to the plain language of federal law, including 8 U.S.C. § 1440, have blocked Plaintiffs' "expedited" path to citizenship by refusing to certify Plaintiffs' honorable service as members of the Selected Reserve.

48.     DoD directed relevant commands to withhold issuance of any N-426 certifications to Selected Reserve soldiers at least until these soldiers serve in an active-duty status. According to Defendant officials, "DoD is not certifying any new MAVNI N-426s" and pursuant to its policy, DoD may rescind prior honorable service certifications that Selected Reserve MAVNIs received without active-duty service. This policy, on its face, unlawfully disrupts and interferes with the naturalization processing of MAVNI Selected Reservists. DHS will not accept, process, or adjudicate a naturalization application from a Selected Reservist if that application does not include an N-426 signed by the military.

49.     DoD's policy is clear and final, and it is negatively impacting Plaintiffs and similarly-situated MAVNI soldiers. On July 7, 2017, a DoD official submitted sworn testimony to the Court in the Nio Action, confirming that "[p]resently, DoD is not certifying any new MAVNI N-426s."

50.     Thereafter, on July 28, 2017, the same DoD official submitted another sworn statement, this time attesting that "DoD has recently determined that the IDT drill periods performed by members of the Selected Reserve . . . are defined in law as not being creditable active duty service . . . and, standing alone, do not qualify for certification of honorable service under 8 U.S.C. § 1440."

51.     On August 17, 2017, Defendants implemented DoD's August N-426 Policy via a memorandum from an Army Lieutenant General to commands to which MAVNI Selected Reservists are assigned.  The subject of that memorandum is "Certification of Honorable Service Pursuant to 8 U.S. Code § 1440," and it orders as follows:

> Effectively immediately, I withhold authority to certify the honorable service (N-426) of Soldiers who have not yet attended Initial Entry Training (IET).  Commanders seeking certification for Soldiers who have not attended IET must provide a detailed justification to the OCAR, G1 that includes an explanation of all periods of active-duty service.

52.     On August 23, 2017, DoD representatives confirmed to this Court that "[t]his document indicates . . . that effective immediately [the issuance of N-426s has] been withheld" and that the message that had been sent out to "everybody in the field" was "not to issue them [N-426s]" and "not to issue anymore [N-426s]."

53.     On August 30, 2017, DoD further confirmed to this Court that DoD is not certifying any MAVNI N-426s while DoD "undertakes a review of the MAVNI program."  And, in sworn testimony on that same day, DoD admitted that the DoD's August N-426 Policy (1) withholds, for an indefinite period of time, N-426 certifications, and (2) was a response to DoD concerns that Army officials "prematurely" certified N-426s in the past.

54.     Plaintiffs commenced this litigation on September 1, 2017, following the implementation of DoD's August N-426 Policy.  The complaint challenged, among other things, Defendants' withholding of N-426s from Plaintiffs and other Selected Reservists who were serving honorably in the Selected Reserve but had not yet served in an active duty capacity.

55.     On September 6, 2017, in the Nio Action, the Court issued a memorandum decision in which it questioned the lawfulness of DoD's assertions that Selected Reservists are

not eligible for naturalization under 8 U.S.C. § 1440 until they have served in an active duty

status.  The Court expressed similar views during court hearings in the Nio Action.

56.    Shortly thereafter, on September 19, 2017, Plaintiffs filed a motion for

preliminary injunction that would order Defendants to issue N-426s to Plaintiffs and others

without waiting for them to serve in an active-duty capacity and without imposing other unlawful

requirements.  This Court, with Defendants' express agreement that the issues in the original

complaint were purely legal, converted the preliminary injunction motion to a summary

judgment motion and set a briefing schedule followed by a hearing on the merits for October 18,

2017.

57.    On October 10, 2017, Defendants filed their opposition to the motion for

summary judgment.  The opposition made no mention of any pending change in DoD's N-426

Policy.  On October 13, 2017, the date set for Plaintiffs to file their summary judgment reply

brief, DoD issued the New DoD N-426 Policy.  The Government "notified" the Court of the New

DoD N-426 Policy by attaching it to a Weekly Status Report filing in the Nio Action on October

13, 2017.  Thereafter, the Court issued an order directing the parties to address the New DoD

N-426 Policy and converting the pending motion back to a preliminary injunction motion.

58.    On October 25, 2017, after further briefing and argument, the Court granted

Plaintiffs' Motion for a Preliminary Injunction and provisionally certified the class.  The October

25 order (as amended on October 27) (the "PI Order") enjoined certain aspects of the New DoD

N-426 Policy and ordered Defendants to issue N-426s to Plaintiffs and the class.

59.    The New DoD N-426 Policy is unlawful on its face in numerous respects.  In

direct contravention of Section 1440(a), for instance, the new policy mandates that MAVNIs

who enlist on or after October 13, 2017 may not receive N-426 certifications until they have

served in an active duty status.  Likewise, in violation of law, the new policy imposes upon new enlistees an unlawful minimum period of service requirement – from 180 days to 1 year – before they are eligible to receive an N-426.

60.     With respect to Selected Reservists who enlisted prior to October 13, 2017, but who had not yet received N-426s as of October 13, including Plaintiffs, the new policy – in "Section II" – specifies that no service member is eligible to receive an N-426 honorable service certification until all of the following criteria are met:

1. Legal and Disciplinary Matters:  The Service Member is not the subject of pending disciplinary action or pending adverse administrative action or proceeding, and is not the subject of a law enforcement or command investigation, AND

2. Background Investigation and Suitability Vetting:   The Service Member has completed all applicable screening and suitability requirements as set forth in Section 1, paragraph 2 above, AND

3. Military Training and Required Service:   The Service Member has served in a capacity, for a period of time, and in a manner that permits and informed determination that the member has served honorably as a member of the Selected Reserve of the Ready Reserve or member of an active component of a military or naval force of the United States, as determined by the Secretary of the Military Department concerned.

61.     The New DoD N-426 Policy is unlawful in multiple respects.  For example, as applicable to Plaintiffs and the class, it appears to require the same type of "military training and required service" requirements as post-October 13 enlistees (*i.e.*, including active duty), even though it does not state so expressly.  Other unlawful pre-conditions to naturalization include, among other things, a minimum period of service requirement, a definition and determination of "honorable" service that does not comport with applicable laws and regulations, and service

"capacity," residency, physical presence, and background check requirements that are contrary to law.

62.     None of these and other N-426 eligibility conditions imposed by the New DoD N-426 Policy is permissible under law.  DoD has a mandatory, non-discretionary duty to complete N-426 Forms for those soldiers (including Plaintiffs and the class) eligible to apply for naturalization under the statute, and DoD's refusal to perform this duty lacks rationality, coherence, and consistency.  DoD has no authority or discretion to impose and mandate compliance with additional conditions in order for these soldiers to obtain their honorable service certifications.

63.     With respect to the "active-duty service" requirement in the New DoD N-426 Policy,  DoD's position is directly at odds with DHS's interpretation of 8 U.S.C. § 1440, including DHS's final rulemaking published in the Federal Register.  And, DoD's position defies and disregards the instructions on the Form N-426 that DHS created for the express purpose of compliance with 8 U.S.C. § 1440.  In fact, as Government counsel conceded to this Court on August 23, 2017, "the Department of Defense and USCIS disagree[] as to an interpretation of [8 U.S.C. § 1440]."   And defendants in the Nio Action previously acknowledged this to the Court, by admitting that "it is the province of USCIS to interpret the Immigration and Nationality Act which is what is Title 8 and which leads to CFRs under Title 8."  In other words, DHS – the agency with exclusive authority to administer the naturalization laws and to adjudicate naturalization applications – does not agree with Defendants' action requiring service in an active-duty status as a prerequisite to any Form N-426 certification.

64.     DoD's policy is directly at odds with DoD's own past interpretation and practices with respect to honorable service certifications under Section 1440.  The reality is that DoD

previously regularly and routinely certified the honorable service of hundreds, if not thousands, of MAVNI soldiers without any service in an active-duty status, without any minimum service period requirement, without any new so-called definition of "honorable" service, and without any of the other unlawful requirements now being imposed by DoD.  This includes numerous health care professional MAVNIs over the years of the program and approximately 500 MAVNI soldiers, including "language" MAVNIs, in recent months.  DoD even has acknowledged, on multiple occasions, that a valid measure for a Selected Reserve MAVNI's eligibility for naturalization is two half-day drills (the equivalent of one day of drilling service).

65.     In short, DoD is engaging in a power play.  Contrary to law, DoD is interfering with and manipulating the naturalization process for Selected Reservists – a process over which it has no more than a ministerial duty to issue N-426 certifications.  For its part, DHS either lacks the wherewithal or the power to block DoD's gambit.  In the meantime, the lives and fates of MAVNI soldiers, including Plaintiffs, hang in the balance.

**Plaintiffs' Honorable Service and N-426 Requests**

66.     Plaintiff Mahlon Kirwa enlisted in the Selected Reserve through the MAVNI program in December 2015.  Mr. Kirwa took his service oath on December 7, 2015.  Mr. Kirwa began drilling with the 414th Chemical Company in Orangeburg, South Carolina as a U.S. Army Private First Class (E-2) in March 2016 and has since participated in multiple Selected Reserve drill periods with his unit.

67.     In July 2017, Mr. Kirwa requested his commander to sign his Form N-426 so that he could submit his N-400 Application for Naturalization.  However, Mr. Kirwa's commander declined to sign the Form N-426, telling Mr. Kirwa that his service to date did not qualify for

issuance of a Form N-426.  The excuse that Mr. Kirwa's commander gave for denying his N-426 was that Mr. Kirwa had not attended at least 48 drill periods.

68.  Following the PI Order, Mr. Kirwa immediately submitted an N-426 to DoD. More than two business days afterwards, and after multiple attempts by Mr. Kirwa to secure compliance, DoD provided Mr. Kirwa with an electronic version of a signed and completed N-426 certifying his honorable service in the Selected Reserve.

69.  Plaintiff Santhosh Meenhallimath enlisted in the Selected Reserve through the MAVNI program in February 2016.  Mr. Meenhallimath took his service oath on February 4, 2016.  Mr. Meenhallimath began drilling with the 353rd Transportation Company in Buffalo, Minnesota as a Specialist (E-4) in January 2017 and has since participated in multiple Selected Reserve drill periods with his unit.

70.  In April 2017, Mr. Meenhallimath requested an official in his unit to sign his Form N-426 so that he could submit his N-400 Application for Naturalization.  However, Mr. Meenhallimath's unit administrator refused to sign the Form N-426 stating that "I have found out that we cannot certify [a Form N-426] unless you are on Active Duty or have a DD214 (you will receive that after BCT/AIT)."  No one from Mr. Meenhallimath's unit signed his N-426.

71.  Following the PI Order, Mr. Meenhallimath immediately submitted an N-426 to DoD.  More than two business days afterwards, and after multiple attempts by Mr. Meenhallimath to secure compliance, DoD provided Mr. Meenhallimath with an electronic version of a signed and completed N-426 certifying his honorable service in the Selected Reserve.

72.  Plaintiff Ashok Viswanathan enlisted in the Selected Reserve through the MAVNI program in June 2016.  Mr. Viswanathan took his service oath on June 24, 2016.  Mr.

Viswanathan began serving with the 353rd Transportation Company in Buffalo, Minnesota as a Specialist (E-4) in August 2016 and has since participated in multiple Selected Reserve drill periods with his unit.

73.     In March 2017, Mr. Viswanathan filed his N-400 Application for Naturalization, attaching a Form N-426.  On March 31, 2017, USCIS responded to Mr. Viswanathan's submission with a Request for Evidence ("RFE") stating that USCIS was unable to fully process his application.  The RFE instructed him to "Take the N-426 to your personnel office, administrative unit, command, or human resources department where your service record can be verified and certified" and noted that "No Recruiter can Certify" the Form N-426.  The RFE instructed Mr. Viswanathan to resubmit the Form N-426 within 30 days.  In April 2017, Mr. Viswanathan contacted his unit administrator regarding his Form N-426 certifying his honorable service.  Mr. Viswanathan's unit administrator responded with the following:  "I have found out that we cannot certify [a Form N-426] unless you are on Active Duty or have a DD214 (you will receive that after BCT/AIT)."  No one from Mr. Viswanathan's unit signed his N-426.

74.     Following the PI Order, Mr. Viswanathan immediately submitted an N-426 to DoD.  More than two business days afterwards, and after multiple attempts by Mr. Viswanathan to secure compliance, DoD provided Mr. Viswanathan with an electronic version of a signed and completed N-426 certifying his honorable service in the Selected Reserve.

75.     Following the PI Order, Defendants issued new policies in response to the PI Order.  Those new policies imposed additional requirements on eligible service members who were seeking N-426s following and pursuant to their rights under the PI Order.  Those new policies did not comply with the PI Order.  Defendants also failed to take reasonable and necessary steps to communicate the PI Order to members of the class, despite their "best efforts"

obligations imposed by the PI Order and their independent statutory obligations, under 10 U.S.C. § 10210 to communicate such information to members of the Selected Reserve.

76.     In the absence of the PI Order requiring DoD to do so, Defendants would not have issued N-426s to any of the Plaintiffs without first subjecting them to unlawful requirements, such as service in an active-duty status, completion of background checks, completion of military suitability determinations, and the like.

77.     As of the date of this Amended Complaint, more than one week after the PI Order, multiple members of the provisional class who submitted N-426s to DoD for certification more than two business days earlier have not received completed certifications from DoD in any form.

## Defendants' Unlawful Conduct Has Caused, and Will Continue to Cause, Substantial and Irreparable Harm to Plaintiffs

78.     Plaintiffs are suffering and will continue to suffer irreparable harm due to Defendants' actions.

79.     The right to acquire United States citizenship is a precious one.  The benefits of U.S. citizenship are priceless, and the consequences of a lost or unlawfully delayed opportunity to acquire citizenship are dire.  Depriving U.S. service members of their opportunity to become naturalized citizens – an opportunity earned through their honorable military service and guaranteed by statute – is an ongoing and mounting harm for which there is no recompense.

80.     Defendants' conduct is unlawfully depriving Plaintiffs and class members of the opportunity to realize fundamental rights and benefits that come along with citizenship, including the right to vote, protection from deportation/removal proceedings, work or school authorization and benefits, the right to travel outside of this country and return to the United States, the ability to meet personal, family and professional obligations, and peace of mind

regarding their legal status to remain in the United States.  This deprivation of citizenship opportunities continues with each passing day.  And every day of lost citizenship rights and benefits is a day that these Plaintiffs can never recover or be recompensed for losing.

81.     Without the ability to obtain a job, a driver's license, a U.S. passport (which has prevented certain Plaintiffs from visiting loved ones and attending important family events), additional educational and professional opportunities, and the myriad other privileges that naturalization would afford, these soldiers are suffering.  DoD's unlawful refusal to certify Plaintiffs' honorable service has led to financial and other distress, hardship, and uncertainty. Simply put, Plaintiffs cannot plan for the future.

82.     Further, Plaintiffs' lawful immigration status has been jeopardized by Defendants' conduct.  Enlistment in the military shows "immigrant intent" that jeopardizes any non-immigrant visa status.  For example, DHS officials have stated that, in the agency's view, MAVNI soldiers who entered the United States on F or M non-immigrant visas are subject to removal because of their enlistment in the U.S. Army.  According to the agency, these U.S. Army soldiers remain "lawfully presen[t]" in the United States only "at the discretion of the agency" and only "for so long as DHS continues to forbear" removal proceeding against them. DHS officials also have stated to this Court – and specifically with reference to MAVNIs – that "any alien without legal immigration status in the United States is subject to removal and may be placed in removal proceedings for failing to maintain status or for any other violation of the immigration laws which would make the alien removable."

83.     And, DoD has told these soldiers the following: "If you are discharged from the Army before you become a citizen, you may no longer have a valid immigration status.  For

example, if you are on an H1B worker visa prior to joining the Army and are later discharged without citizenship, you will have no legal status."

84.     Furthermore, current DHS guidance relating to F and M non-immigrant visas provides that if a MAVNI Selected Reserve soldier receives "compensation during Reserve duty, this marks the beginning of employment and the [Designated School Officials] must terminate the student [Student and Exchange Visitor Information System ("SEVIS")] record."  While DHS officials have represented that, at least for now, the agency "will not enforce the requirement that designated school officials terminate the [SEVIS] record of a student solely because he or she accepts compensation for participating in Reserve duty," the "requirement" still exists and this representation affords no comfort whatsoever to MAVNI soldiers whose enrollment already has been terminated or will be terminated by school officials in compliance with this DHS requirement.

85.     By withholding certification of honorable service for Plaintiffs and similarly-situated soldiers, DoD is not even allowing these soldiers the modicum of "lawful presence" protection that may accompany a pending naturalization application.

86.     Further, the new uncertainty associated with their military careers, and concomitantly their legal status, is causing anguish and is particularly unconscionable given that each Plaintiff is serving during a period of armed conflict and has sworn an oath to protect and defend the United States.

87.     Finally, any loss of the opportunity to become U.S. citizens on the part of Plaintiffs and the members of the class, after already having volunteered to serve in the United States military, could subject these individuals to extreme peril.  These individuals would be subject to deportation to countries of origin, where, for some, they could face detention,

interrogation, prosecution, and/or imprisonment because of their decision to enlist in the U.S.

Army and swear their allegiance to the United States and the Constitution.

## CLASS ACTION ALLEGATIONS

88.   The named Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of

Civil Procedure on behalf of themselves and all other persons similarly situated.  The named

Plaintiffs seek to represent the below-described class:

89.   Class:  All individuals who: (i) have enlisted in the U.S. military through the

Military Accessions Vital to the National Interest ("MAVNI") prior to October 13, 2017; (ii)

have served in the Selected Reserve of the Ready Reserve ("Selected Reserve"); and (iii) have

not received a completed Form N-426 from the military (as of October 25, 2017).

90.   The members of Plaintiffs' class warrant class action treatment because they

fulfill the certifying requirements under Rule 23(a) of the Federal Rules of Civil Procedure.

While the exact number of class members is unknown to Plaintiffs at this time, recent DoD

memoranda – including a May 19, 2017 "Action Memo" signed by DoD Under Secretaries, a

July 27, 2017 memorandum from the Acting Secretary of the Army, and sworn statements by

DoD representatives in the Nio Action – indicate that the proposed class would consist of

approximately 2,000 members.

91.   The proposed class meets the numerosity requirement of Rule 23(a)(1) because

the members of the class are so numerous that joinder of all members is impractical.

92.   The proposed class meets the commonality requirement of Rule 23(a)(2) because

there are questions of law and fact common to the class, including, for example, whether DoD

has a mandatory duty to complete N-426 Forms and whether DoD's "active-duty service"

requirement and numerous other pre-conditions for certification of a Form N-426 are contrary to law.

93.     The proposed class meets the typicality requirement of Rule 23(a)(3) because the claims of the named Plaintiffs are typical of the claims of each of the class members.  Class members and Plaintiffs similarly are affected by Defendants' wrongful conduct in violation of federal law, including 8 U.S.C. § 1440, that is described herein.

94.     The named Plaintiffs will fairly and adequately protect the interests of the class as required by Rule 23(a)(4) because their interests are identical to those of the other members of the class.  Fair and adequate protection of the interests of the class will be further ensured because the named Plaintiffs are represented by competent legal counsel who are experienced in federal litigation, are undertaking representation on a pro bono basis, and have adequate resources and commitment to represent the class as a whole.  As of the filing of this Amended Complaint, Plaintiffs already have demonstrated their ability to serve as class representatives by filing a motion for preliminary injunction on behalf of themselves and the class – which the Court granted – and having the Court, via an October 27, 2017 Order, provisionally certify the class and provisionally certify Plaintiffs as class representatives.  Plaintiffs are committed to continuing to represent the class until their claims for permanent injunctive and other relief are fully and finally adjudicated and until all eligible class members who seek to obtain completed N-426s allowing them to apply for naturalization receive them from DoD with certainty.

95.     Furthermore, as contemplated by Rule 23(b)(1), if the individual members of the class were to bring separate suits to address Defendants' policies, practices, and actions and inactions, Defendants may address the cases of the named Plaintiffs but ignore the concerns of the remaining class members, thereby exacerbating Defendants' violations of the law.  Resolving

this matter as a class action also would serve the Court's interest in judicial economy by avoiding overburdening the courts with individual lawsuits brought by each of the many enlistees recruited through the MAVNI program whose Form N-426 honorable service certifications are being withheld subject to DoD's unlawful active-duty service requirement.

96.     Alternatively, this case qualifies for class action treatment under Rule 23(b)(2) because Plaintiffs seek final injunctive and declaratory relief.  This relief is appropriate for the whole class as Defendants' actions and/or refusals to act apply generally to the class as a whole.

## CLAIMS FOR RELIEF

### Count I: Declaratory Judgment

97.     Plaintiffs re-allege paragraphs one through ninety-six as if fully set forth herein.

98.     28 U.S.C. § 2201 authorizes a court, "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading" to "declare the rights and other legal relations of any interested party seeking such declaration . . . ."

99.     8 U.S.C. § 1440 establishes a clear, limited, and purely ministerial role for DoD in the naturalization process.  DoD's role is to verify, by way of Form N-426, whether a soldier is or is not serving honorably based on that soldier's existing service record.

100.     8 U.S.C. § 1440, the implementing regulations promulgated thereunder, and the final rules published in the Federal Register further provide that soldiers with honorable service as a member of the Selected Reserve of the Ready Reserve are eligible for naturalization under Section 1440.  Service in an active-duty status is not required.  Contrary to the express language of the statute and regulations, DoD has adopted N-426 policies, including the August DoD N-426 Policy and the New DoD N-426 Policy, that purport to preclude Plaintiffs and the class

from obtaining N-426 honorable service certifications until Plaintiffs satisfy certain DoD requirements that have no legal justification.

101.    Accordingly, Plaintiffs seek declaratory judgment that:

(i)     DoD may not withhold or unreasonably delay completion and execution of Form N-426 service certifications for Selected Reserve MAVNI soldiers;

(ii)    For purposes of 8 U.S.C. § 1440, one day of Selected Reserve service is sufficient;

(iii)   DoD may not refuse to certify honorable service for Selected Reserve MAVNI soldiers on the basis that any other requirement – such as service in an active-duty status, completion of background checks,  a military suitability or other military determination, or any other requirement set forth in the New DoD N-426 Policy – is necessary for naturalization under 8 U.S.C. § 1440; and

(iv)    Unless the soldier's existing service record reflects conduct that disqualifies that service from being designated honorable – under the recognized standard applicable to all soldiers regardless of immigration status, DoD may not withhold an honorable service certification for any Selected Reserve MAVNI soldier seeking naturalization.

**Count II: Injunctive Relief**

102.    Plaintiffs re-allege paragraphs one through one hundred one as if fully set forth herein.

103.    Through their N-426 policies, Defendants have imposed unlawful conditions on the issuance of N-426s to honorably serving members of the Selected Reserve who enlisted prior

30

to October 13, 2017 and who are seeking to apply for naturalization.  Defendants' actions

interfere with and prevent the submission, processing, and adjudication of Plaintiffs'

naturalization applications under 8 U.S.C. § 1440.

104.    Defendants' unlawful and improper actions have caused irreparable harm, for

which they have no adequate remedy at law.  Under the facts and circumstances of this case, the

balance of the equities clearly favors Plaintiffs, and injunctive relief is in the public interest.

105.    On October 27, 2017, in an amended order (Dkt. 32), the Court entered an order

granting Plaintiffs' motion for preliminary injunction:

- "preliminarily enjoin[ing] [Defendants] from refusing to sign and issue Form
  N-426s to members of the Selected Reserve pursuant to Section II of DOD's
  October 13, 2017 Guidance [New DoD N-426 Policy];"

- "preliminarily enjoin[ing] [Defendants] from refusing to certify MAVNI enlistees
  who have served for one day or more in the Selected Reserve as having honorable
  service, except as related to the conduct of an individual plaintiff or class member
  as reflected in the soldier's service record and based on sufficient grounds
  generally applicable to all members of the military;" and

- "[o]rder[ing] that, after members of the provisionally-certified class submit or
  resubmit N-426s to their military officer ranked O6 or higher, defendants should
  use their best efforts to certify or deny Form N-426s, as was done for the *Nio*
  plaintiffs, within two business days of receipt of Form N-426."

106.    Plaintiffs seek any other preliminary relief necessary, such as enjoining

Defendants from taking any retaliatory actions against Plaintiffs or members of the class.

107.    Plaintiffs further seek to have the already-issued preliminary injunction converted to a final and permanent injunction and, in addition, seek to permanently enjoin Defendants from retaliating against Plaintiffs or class members, including by discharging or separating them from the military pending issuance of their N-426 Forms and processing of their naturalization applications.

## Count III: Relief Pursuant to the Administrative Procedure Act

108.    Plaintiffs re-allege paragraphs one through one hundred seven as if fully set forth herein.

109.    5 U.S.C. § 706(1) authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." Reviewable agency action includes an agency's failure to act. Defendants unlawfully have withheld and/or unreasonably delayed the issuance of Form N-426s and honorable service certifications to Plaintiffs and the class contrary to the plain language of applicable law, including 8 U.S.C. § 1440.

110.    Plaintiffs have a clear right to receive honorable service certifications for naturalization purposes pursuant to 8 U.S.C. § 1440 based on their current service and based on the current record. Defendants have interfered with that right and the only adequate remedy is to order Defendants to resume certification of Plaintiffs' honorable service solely in accordance with existing criteria, law, and regulations.

111.    Accordingly, Plaintiffs seek an order from the Court pursuant to 5 U.S.C. § 706(1) compelling Defendants to comply with their statutory obligations pursuant to 8 U.S.C. § 1440 to issue Form N-426s certifying the honorable service of Plaintiffs and members of the class.

112.   5 U.S.C. § 706(2) authorizes a court to hold unlawful and set aside final agency action found to be arbitrary, capricious, an abuse of discretion (*e.g.*, irrational), or otherwise not in accordance with law, or in excess of statutory jurisdiction or authority.

113.   Defendants' N-426 policies impose unlawful preconditions to DoD's issuance of N-426 honorable service certifications to Plaintiffs and the class.   The conditions imposed by the N-426 policies are contrary to the plain language of the statute, implementing regulations, and final rulemaking and exceed DoD's statutory authority and represent a departure from and change in the legal landscape vis-à-vis Defendants' prior N-426 policies and practices.  As such, Defendants' policies are unlawful on their face and otherwise are being unlawfully applied retroactively to Plaintiffs and the class.

114.   Accordingly, Plaintiffs seek an order: (i) holding unlawful and setting aside Defendants' policies; (ii) declaring such policies unlawful; (iii) enjoining Defendants from withholding issuance of N-426s and from refusing to certify honorable service except as related to the conduct of an individual soldier as reflected in that soldier's service record and based on sufficient grounds generally applicable to all members of the military; and (iv) enjoining Defendants from applying the policy to Plaintiffs and the class.

## Count IV: Mandamus

115.   Plaintiffs re-allege paragraphs one through one hundred fourteen as if fully set forth herein.

116.   28 U.S.C. § 1361 authorizes a court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" if the plaintiff can demonstrate that: (1) the plaintiff seeking mandamus has a clear right to the relief requested;

(2) the defendant has a clear duty to perform the act in question; and (3) no other adequate remedy is available.

117.    By virtue of their service in the Selected Reserve and their stated intention to apply for naturalization pursuant to 8 U.S.C. § 1440, Plaintiffs have the right and need to obtain from Defendants a certification of their honorable service, via Form N-426.

118.    Pursuant to 8 U.S.C. § 1440, Defendants have a mandatory duty and obligation to perform the ministerial function of verifying Plaintiffs' service status from their existing service records and certifying – via Form N-426 – Plaintiffs' honorable service.

119.    Defendants have refused to perform this limited task and have implemented policies thwarting and/or preventing the issuance of N-426 certification to Plaintiffs and the class.

120.    Accordingly, Plaintiffs seek issuance of a writ of mandamus compelling Defendants to comply with their ministerial obligations pursuant to 8 U.S.C. § 1440 to certify the honorable service of Plaintiffs and the class.

## Count V: Constitutional Violations

121.    Plaintiffs re-allege paragraphs one through one hundred twenty as if fully set forth herein.

122.    Under the "uniform Rule of Naturalization" clause of the Constitution, Congress is vested with the sole legal authority to establish eligibility criteria for naturalization.

123.    By enacting 8 U.S.C. § 1440, Congress has specified the naturalization eligibility conditions applicable to Selected Reservists such as Plaintiffs and the class.  Congress did not authorize DoD to establish or impose naturalization conditions or to enforce or adjudicate naturalization applications.

124.    Congress assigned to DHS the exclusive responsibility for determining a service member's eligibility for naturalization under 8 U.S.C. § 1440.

125.    Congress did not assign to DoD any role in naturalizations other than the ministerial task of certifying whether soldiers have served honorably.

126.    Pursuant to 8 U.S.C. § 1440, Plaintiffs and the class – as Selected Reservists serving honorably during wartime – have a clear statutory entitlement to apply for naturalization.

127.    Through their N-426 policies, Defendants are interfering with and otherwise depriving Plaintiffs and the class of their right to apply for naturalization.  Defendants' N-426 policies constitute additional, non-statutory, substantive pre-conditions to naturalization that are contrary to law.  As such, they violate the Constitution with resulting harm to Plaintiffs and the class.

128.    Plaintiffs and the class assert that they meet all of the lawful eligibility requirements to become naturalized citizens.  As such, applying lawful eligibility criteria, their applications must be granted.  There is no discretion to deny naturalization to a person who satisfies the criteria established by Congress.

129.    Defendants' N-426 policies, as described above, impose unauthorized, unlawful, and/or arbitrary conditions on Plaintiffs' ability to apply for naturalization.  Defendants' conduct therefore violates Plaintiffs' (and the class's) right to due process under the Fifth Amendment to the U.S. Constitution because these soldiers cannot be denied immigration benefits – namely naturalization – for which they are eligible and seeking.

130.    Plaintiffs seek appropriate equitable relief for these violations.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and the class, respectfully request that this Court:

1. Assume jurisdiction over this action;

2. Enter the declaratory judgment requested in Count I of this Amended Complaint;

3. Maintain and grant the injunctive relief requested in Count II of this Amended Complaint;

4. Grant the APA relief requested in Count III of this Amended Complaint;

5. Issue the mandamus requested in Count IV of this Amended Complaint;

6. Grant the relief requested pursuant to Count V of this Amended Complaint.

7. Award Plaintiffs and the class reasonable costs and attorneys' fees, including under the Equal Access to Justice Act; and

8. Award such further relief as the Court deems just or appropriate.

Respectfully submitted this 3rd day of November 2017.


/s/ Joseph J. LoBue

Joseph J. LoBue (D.C. Bar No. 484097)
Douglas W. Baruch (D.C. Bar No. 414354)
Jennifer M. Wollenberg (D.C. Bar No. 494895)
Neaha P. Raol (D.C. Bar No. 1005816)
Webster R. M. Beary (D.C. Bar No. 1041653)
Shaun A. Gates (D.C. Bar No. 1034196)
Katherine L. St. Romain (D.C. Bar No. 1035008)
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Telephone:  (202) 639-7000
Facsimile:   (202) 639-7003
Email: joseph.lobue@friedfrank.com
Email: douglas.baruch@friedfrank.com
Email: jennifer.wollenberg@friedfrank.com

*Counsel for Plaintiffs*