# **Exhibit D**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAHLON KIRWA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE and JAMES MATTIS, in his<br>official capacity as Secretary of Defense,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:17-cv-01793<br>) The Honorable Ellen Segal Huvelle<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF STEPHANIE MILLER

I, Stephanie Miller, do hereby declare as follows:

1.　　I am currently the Director, Accession Policy Directorate, in the Office of the Under Secretary of Defense for Personnel and Readiness, Department of Defense ("DoD"), in Washington, D.C. In this capacity, I have oversight for developing, reviewing, and analyzing policies, resource levels, and budgets for enlisted recruiting and officer-commissioning programs. My duties include oversight of the Military Accessions Vital to the National Interest (MAVNI) pilot program, as well as policies and programs relating to the overall recruitment and accession of both officers and enlisted service members. In this capacity, I had direct oversight of the development and implementation of three distinct but related memoranda released on October 13, 2017, regarding management of the MAVNI pilot program, pre-accession security and suitability screening of Lawful Permanent Residents (LPRs), and certification of honorable service for the purpose of supporting service-member applications for naturalization under 8 U.S.C. § 1440(a).

2.      I make this declaration in support of the Defendants' Motion to Dismiss Amended Complaint or in the Alternative for Summary Judgment. This declaration sets forth the following: (1) that DoD is the agency tasked by Congress with the responsibility of certifying honorable service via the Form N-426, which is attached to an applicant's Form N-400 Application for Naturalization; (2) that DoD has identified counterintelligence (CI) and security problems with the MAVNI pilot program with respect to, *inter alia*, the background vetting of service members inducted into the military services via that program; (3) the rationale behind DoD's decision to require completion of Tier 5 background investigations (since 2012) and the addition of other security screening measures prior to certifying honorable service for MAVNI enlistees; and (4) the negative consequences (to include national security concerns) that would result from certifying honorable service prior to the completion of the suitability screening process.

3.      I previously submitted two declarations in a case captioned *Nio, et al. v. U.S. Dep't of Homeland Security, et al.*, Case No. 1:17-cv-00998-ESH (D.D.C.). The first declaration was filed on July 7, 2017 (ECF No. 19-7), and the second declaration was filed on July 28, 2017 (ECF No. 25-2). The contents of both of those declarations are adopted by incorporation into this declaration.

### Role of Suitability Screening in the MAVNI Program

4.      All military recruits must complete a "military-suitability determination" (also called a "suitability for service determination") based on character and conduct. *See* Department of Defense Instruction ("DODI") 1304.26 (March 23, 2015, Incorporating Change 2, April 11, 2017), Qualification Standards for Enlistment, Appointment, and Induction Enclosure 3, Paragraph 2(h). An individual recruited via the MAVNI pilot program must be determined

suitable for military service before the member accesses into the military (either as a member of the Active Component or the Selected Reserve). By reviewing an applicant's character and conduct, the military seeks to "minimize entrance of persons who are likely to become disciplinary cases, security risks, or who are likely to disrupt good order, morale, and discipline." DOD Manual 5200.2. Generally, the military service suitability standard "that must be applied in determining whether a person is suitable under national security criteria for [military service] is that, based on all available information, there is no reasonable basis for doubting the person's loyalty to the Government of the United States." *Id.* Recruits or service members who are unable to successfully complete the suitability screening requirements will either have their enlistment contract cancelled or (in the case of the Delayed Training Program ("DTP")) are released from service under an uncharacterized entry level separation and are precluded from re-enlisting. *See* Department of Defense Instruction (DoDI) 1304.26, dated March 23, 2015, Incorporating Change 2, April 11, 2017; Subject: Qualification Standards for Enlistment, Appointment, and Induction E3P2. Army informs USCIS when MAVNI recruits are released from the service.

     5.     With respect to the accession of individuals through the MAVNI pilot program, it has always been DoD's intent to require the completion of a suitability for service determination well prior to accession and a certification of honorable service for the purposes of naturalization. This is because facts uncovered through the background investigation may demonstrate that an enlistee is either not qualified to serve in the military or presents an unmitigable security risk. For instance, unmitigable criminal history or foreign preference, or evidence that the enlistee made false or fraudulent statements at the recruitment stage, may require the enlistee's discharge under other than honorable circumstances. DoD does not wish to vouch for the honorable

service of a recruit who, in light of facts developed through the investigation, may not be qualified to serve or presents a national security risk.

6. DoD's assessment of the risk posed by the MAVNI population has increased over the course of the pilot program, as borne out by the evidence. As early as 2010, DoD found security and CI concerns among MAVNI applicants that would preclude their accession or continued military service. In fact, the concerns were so significant that the Deputy Secretary of Defense delayed the reinstatement of the MAVNI pilot program from August 2010 to May 2012, pending review completion of increased security protocols and additional monitoring requirements. *See* Memorandum, Subject: (U) Reinstatement of Military Accessions Vital to National Interest Pilot Program (with enclosures), dated May 16, 2012; signed by Ashton B. Carter, Deputy Secretary of Defense. Successive program reviews and reauthorization memoranda emphasize the importance of security, counterintelligence, and suitability screening of this population for this very purpose. *See* Memorandum, Subject: Military Accessional Vital to National Interest Program Changes, dated September 25, 2014; signed by Jessica L. Wright, Under Secretary of Defense for Personnel and Readiness; Memorandum, Subject: (U) Military Accessions Vital to the National Interest Pilot Program Extension, dated September 30, 2016; signed by Peter Levine, Acting Under Secretary of Defense for Personnel and Readiness. Because unmitigable adverse facts uncovered through the background check process may obviate otherwise seemingly honorable service, DoD cannot make an informed honorable service determination until it has completed and adjudicated these investigations.

7. A 2016 review of the program determined that the screening outlined in the 2010 through 2012 program reauthorizations was not being implemented adequately, and MAVNI personnel were being accessed prior to completing the necessary screening requirements.

Specifically, the review, which was led by the offices of the Under Secretary of Defense for Personnel & Readiness and Intelligence from June through September 2016, found that despite DoD's original intent that suitability determinations be completed prior to an honorable service determination, the Department of the Army issued an exception to policy. *See* Memorandum Subject: Exception to Policy to Ship Military Accessions Vital to the National Interest (MAVNI) to Training with Favorable National Intelligence Agency Checks (NIAC), dated February 4, 2013, Howard Bromberg, Lieutenant General, (Army) Deputy Chief of Staff G-1. This exception permitted Army recruiting elements to access MAVNI recruits to both active and Selective Reserve service who were not in receipt of their background investigation results, but who had received a favorable National Intelligence Agency Check (NIAC). However, the DoD Manual 5200.2 does not recognize the NIAC, standing alone, as a viable means to conduct a background investigation or counterintelligence check.

8. Additionally, DoD's review raised concerns that Army was enlisting MAVNI recruits in the Army Reserve Delayed Training Program ("DTP"). The DTP is a Selected Reserve status whereby newly recruited individuals are allowed to complete reserve drill periods in an Inactive Duty Training ("IDT") status while awaiting shipping to initial entry training ("IET" or "basic training"). While individuals in the DTP are considered service members, they are not deployable in support of military operations until after they have completed IET as prescribed by law. The review revealed that some individuals were receiving N-426 certifications prior to the completion of suitability screening and prior to attending basic military training. DoD considers the N-426 certifications issued to MAVNI soldiers who had not completed suitability screening to have been issued in error.

9. As a general matter, foreign populations, including the MAVNI population, present unique national security concerns, to include an elevated risk of possible foreign influence, foreign preference, and potential lack of allegiance to the United States. Additionally, information gaps exist on individuals from foreign countries for periods prior to entry into the United States and periods of travel outside of the United States. These factors contribute to the foreign population's failure of background checks at a higher rate than U.S. nationals. Within the foreign population, the MAVNI population specifically has a higher rate of failure under the adjudicative guidelines than other groups, such as LPRs or foreign students enrolled at military universities. Therefore, as a result of the Army's informal practice of certifying honorable service prior to completion of security vetting, the Department effectively endorsed citizenship for individuals who subsequently were identified with elevated security and counterintelligence risk profiles. Although DoD policy offices did not become aware of this practice until several years after it had first occurred, once the issue was identified, the Department directed an immediate termination of the practice. Any delay in issuing written policy guidance can be explained in part by the federated nature of the Department of Defense, whereby administrative details regarding program execution are often delegated to lower echelons: as a result, it may take months, if not years, for policy departures to come to the attention of senior officials. Further due to the federated nature of the Department, the development, coordination, and implementation of a universal solution often takes an extended period.

10. Following DoD's 2016 internal review of the MAVNI pilot program, including the process for making honorable service determinations, DoD directed that the Military Departments temporarily cease certifying any Forms N-426 until the promulgation of written policy guidance that established standardized criteria for making such determinations.

**Purpose of October 13, 2017, Policy for N-426 Certification**

11. On October 13, 2017, DoD issued an inaugural policy that set forth a specific process, applicable to all Military Departments, for certifying honorable service on Forms N-426. Establishing a clear and consistent process for N-426 certification was especially important in light of the inconsistent standards within and between Military Departments used in recent years. The inaugural policy makes clear that a MAVNI service member who entered service before October 13, 2017, will not receive an N-426 certification unless the individual (1) is not the subject of any pending disciplinary action or pending adverse administrative action or proceeding, and is not the subject of a law enforcement or command investigation; (2) has completed the requisite screening and suitability requirements for MAVNI service members, as discussed above; and (3) has served in a capacity, for a period of time, and in a manner that permits an informed determination that the individual has served honorably as a member of the Selected Reserve of the Ready Reserve or of an active-duty component.

12. It is important to note that some of the policy sources that the court cited in its opinion are guides for service members to use based upon the USCIS Policy Manual and are not official DoD policy documents in and of themselves. They did not, and do not, reflect official DoD policy, nor were coordinated or approved by DoD policy offices. The guides are not in any way tailored or specific to the MAVNI pilot program. Examples cited by the district court include the Soldier's Guide to Citizenship Application, the U.S. Navy Guide to Naturalization Applications Based Upon Qualifying Military Service, and the USCIS Policy Manual. All existing Military Service policy is superseded by the policy guidance October 13 DoD policy.

13. DoD's policy of requiring completion of suitability screening prior to N-426 certification fulfills multiple goals. As an initial matter, this policy ensures that DoD has

sufficient information to determine whether an individual is suitable to be accessed into military service. Adverse information obtained during the suitability screening process, including any information about prior criminal history, CI, and counterterrorism threats, may disqualify the member for service. If such information is discovered during the screening process, it is referred to the relevant military department to determine whether the individual should be separated from the military. It is the intent of DoD that persons whose background investigations reveal unmitagable derogatory information will be discharged from the military. For members of this class, because they have not attended initial entry training, their discharge would be uncharacterized. This is consistent for all service members, whether foreign or native-born. See Department of Defense Instruction ("DODI") 1304.26 (March 23, 2015, Incorporating Change 2, April 11, 2017), Qualification Standards for Enlistment, Appointment, and Induction Enclosure 3, Paragraph 2(h). Only after DoD has determined, as an initial matter, that a person (whether MAVNI or not) is qualified to be a service member, and there does not exist any information that would justify termination of the person's enlistment contract, will DoD be able to meaningfully certify that the individual has served honorably.

14. In addition, waiting until the completion of suitability determinations to make N-426 certifications enables DoD to confirm that an individual MAVNI's enlistment was not based on false or fraudulent information. Information from a suitability screening may be disqualifying for the purpose of enlistment because it contradicts representations MAVNI service members made at the time they enlisted. For example, DoD's review of the MAVNI program uncovered that a number of individuals accessed into the military based on the receipt of fraudulent visas at universities that did not exist; that some MAVNI recruits attended, and later falsified transcripts from, universities owned by a foreign national-security agency and a state-

8

sponsored intelligence organization, and that one MAVNI recruit who entered the United States on a student visa had professed support for the 9/11 terrorists and said he would voluntarily help China in a crisis situation.[1] Had this information been known to DoD at the time of enlistment, these individuals would not have been permitted to enlist. Requiring the completion of suitability screening thus allows DoD to ensure that it is not certifying as having served honorably soldiers who enlisted under false or fraudulent pretenses. In sum, requiring security and suitability screening is of utmost importance to DoD because that screening determines whether the individual is eligible to serve in the military. If the individual is ineligible to serve, they cannot apply for naturalization on the basis of that service. DoD cannot certify persons as serving honorably where vital information pertinent to that determination and to the suitability for service determination is still being collected. In addition, the Department will not mislead other Federal agencies with respect to the character of service members who have not been thoroughly vetted.

15. One of the key features of the MAVNI program is affording foreign-born persons who are not LPRs the opportunity to serve in the military and become naturalized citizens. This feature would be undermined if DoD were required to facilitate naturalization petitions for persons who pose a national security risk, cannot meet the military's basic suitability requirements in the first instance, and/or whose enlistment was based on misleading, false or fraudulent information.

---

[1] DoD previously provided two classified documents to the Court for review on an *ex parte*, *in camera* basis in *Nio, et al. v. DHS, et al.*, No. 17-998 (D.D.C.). A third classified document, not previously provided, was also considered by the agency in connection with its preparation of the October 13, 2017, policy. To the extent the Court requests review of any of these documents in this case, DoD can make the documents available to the Court solely on an *ex parte*, *in camera* basis.

16. DoD's N-426 policy, moreover, communicates to USCIS that the military has determined, to the best of its knowledge, that a MAVNI soldier who has been certified as serving honorably does not present a security threat to the military and the United States, and did not enlist under false pretenses. At the time DoD began its review of the N-426 certification process, USCIS's practice of holding naturalization applications in abeyance pending completion of DoD's suitability screenings was pursuant to an informal interagency agreement and was subject to legal challenge. Were this agreement to change, or should USCIS be found without legal authority to hold naturalization applications in abeyance, citizenship could be granted to persons based on their purportedly "honorable" military service who have not yet even completed a DoD background investigation needed for this determination and who have not met other suitability requirements. This could result in some persons being granted citizenship pursuant to the MAVNI program who ultimately are barred from military service—contrary to the entire purpose of the program.

Pursuant to 28 U.S.C. § 1746(2), I declare under the penalty of perjury that the foregoing is true and correct.

Executed on *17 November 2017*

*Stephanie P. Miller*
STEPHANIE P. MILLER