# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MAHLON KIRWA,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 17-1793(ESH)** |
| **UNITED STATES DEPARTMENT OF DEFENSE,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs, and the class whom they represent, are non-citizens serving in the United States Army's Selected Reserve of the Ready Reserve ("Selected Reserve") who enlisted under the United States Department of Defense's Military Accessions Vital to the National Interest ("MAVNI") program. Each wants to apply for citizenship pursuant to 8 U.S.C. § 1440, which provides an expedited path to citizenship for soldiers who serve during specified periods of military hostilities. To do so, however, they need a signed Form N-426, which is a form that certifies an applicant's qualifying military service and must be submitted to the United States Citizenship and Immigration Services ("USCIS") in order to apply for naturalization based on military service. Plaintiffs bring this action against the United States Department of Defense ("DOD") and Secretary James Mattis, claiming that the military's refusal to issue their Form N-

426s is unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Constitution.[1]

Before the Court is defendants' motion to dismiss, or in the alternative, for summary judgment. (Nov. 17, 2017, ECF No. 39, ("MTD").) For the reasons stated herein, the Court will grant defendants' motion to dismiss plaintiffs' constitutional substantive-due-process claim, but otherwise denies defendants' motion.

## BACKGROUND

The relevant background is set out in detail in the Court's prior opinions certifying the class[2] and granting preliminary injunctive relief to plaintiffs. (Mem. Op., Dec. 1, 2017, ECF No. 47, ("Class Cert. Op.")); *Kirwa v. United States Dep't of Def.*, No. 17-cv-1793, 2017 WL 4862763 (D.D.C. Oct. 25, 2017) (granting preliminary injunctive relief).[3] Given the posture of the case, the Court need only summarize plaintiffs' allegations and the relevant procedural history.

---

[1] Although the three named plaintiffs have received Form N-426s as a result of this Court's preliminary injunction, the Court has granted plaintiffs' counsel leave to substitute new named plaintiffs who have yet to receive a completed Form N-426. (Order, Dec. 1, 2017, ECF No. 48.)

[2] The class consists of all persons who (1) have enlisted in the U.S. military through the MAVNI program prior to October 13, 2017, (2) have served in the Selected Reserve, and (3) have not received a completed and duly authenticated Form N-426. (Order, Dec. 1, 2017, ECF No. 48.) On December 14, 2017, the Court ordered defendants to disseminate notice to the class of their rights under the preliminary injunction. (ECF No. 54.)

[3] The issues in this case overlap with a related case before this Court, *Nio v. United States Department of Homeland Security*, No. 17-cv-0998, 2017 WL 3917006 (D.D.C. Sept. 6, 2017). That case involves MAVNI enlistees who have already received a completed Form N-426, but have brought similar challenges to DOD's recent change in its N-426 policy. In addition, the *Nio* plaintiffs are challenging the Department of Homeland Security's ("DHS") and USCIS's decision to put their naturalization applications on hold pending DOD's completion of the enhanced security screening ("DHS/USCIS Security Screening Requirement") it now requires for MAVNI enlistees prior to initial entry training ("IET") or active-duty service.

# I.    FACTUAL BACKGROUND

DOD encouraged plaintiffs to enlist in the MAVNI program touting the opportunity as an "expedited" path to citizenship.  (Pls.' Am. Compl., Nov. 3, 2017, ECF No. 33 ("Am. Compl."), ¶¶ 26, 121–30.)  In return, "[e]ach Plaintiff's enlistment contract obligates him to eight years of service in the Army Reserve, six years of which must be served in the Selected Reserve."  (*Id.* ¶ 27.)

From the inception of the MAVNI program in 2008 until early 2017, USCIS naturalized "at least 10,000 MAVNI enlistees" through an expedited path to citizenship.  *Nio v. United States Dep't of Homeland Sec.*, No. CV 17-cv-998, 2017 WL 3917006, at *3 (D.D.C. Sept. 6, 2017).  Prior to the events relevant to this case and the related *Nio* case, this expedited path to citizenship meant that officers under DOD's control could, and would often, certify a Selected Reservist's honorable service after one qualifying day of drilling service by checking "yes" or "no" on the Form N-426.  (Am. Compl.  ¶¶ 46, 64.)  Under this non-formalized policy, executed by DOD officers through at least 2017, plaintiffs and the class were eligible for an honorable service certification based on their past qualifying service, and this certification was routinely granted to similar enlistees in an expeditious fashion.  (*Id.*  ¶¶ 11, 27, 64, 89.)  In short,

> what typically happened to a MAVNI in the Army's Selected Reserve is that the enlistee would sign the enlistment contract and go to IET in approximately 180 days. . . . If MAVNIs did not have certified N–426s before they entered IET, they would receive one and apply for citizenship at IET.  IET would be completed in ten to twelve weeks, and by the end of IET, USCIS would have adjudicated their N–400 naturalization applications, and the MAVNIs would be granted citizenship.

*Kirwa*, 2017 WL 4862763, at *6 (internal citations omitted).

Sometime in 2017 DOD began to reevaluate their N-426 policy,  and on August 17, 2017, before plaintiffs could get certified N-426s, DOD "directed relevant commands to withhold

issuance of any N-426 certifications to Selected Reserve soldiers at least until these soldiers serve in an active-duty status" (Am. Compl. ¶ 48), a status that would not be satisfied by drill periods. (*Id.* ¶¶ 51–53.) Thereafter, plaintiffs filed suit on September 1, 2017 challenging the August 17th policy.

However, on October 13, 2017, defendants issued a new policy that no longer required active-duty status, but instead, it specified that

> no service member is eligible to receive an N-426 honorable service certification until all of the following criteria are met:
>
> 1. Legal and Disciplinary Matters: The Service Member is not the subject of pending disciplinary action or pending adverse administrative action or proceeding, and is not the subject of a law enforcement or command investigation, AND
>
> 2. Background Investigation and Suitability Vetting: The Service Member has completed all applicable screening and suitability requirements as set forth in Section 1, paragraph 2 above, AND
>
> 3. Military Training and Required Service: The Service Member has served in a capacity, for a period of time, and in a manner that permits and informed determination that the member has served honorably as a member of the Selected Reserve of the Ready Reserve or member of an active component of a military or naval force of the United States, as determined by the Secretary of the Military Department concerned.

(*Id.* ¶ 60 ("October 13th Guidance").) Plaintiffs allege that DOD's October 13th Guidance is

> directly at odds with DoD's own past interpretation and practices with respect to honorable service certifications under Section 1440. The reality is that DoD previously regularly and routinely certified the honorable service of hundreds, if not thousands, of MAVNI soldiers without any service in an active-duty status, without any minimum service period requirement, without any new so-called definition of "honorable" service, and without any of the other unlawful requirements now being imposed by DoD. This includes numerous health care professional MAVNIs over the years of the program and approximately 500 MAVNI soldiers, including "language" MAVNIs, in recent months. DoD even has acknowledged, on multiple occasions, that a valid measure for a Selected Reserve MAVNI's eligibility for naturalization is two half-day drills (the equivalent of one day of drilling service).

(*Id.* ¶ 64.)

## II.  PROCEDURAL HISTORY

Plaintiffs filed a complaint on September 1, 2017, challenging DOD's refusal to complete their N-426 Forms and to certify their honorable service in the Selected Reserve as unlawfully imposing extra-statutory requirements in violation of § 1440.  8 U.S.C. § 1440(a) (non-citizen is eligible for citizenship if he "has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status").  Plaintiffs have brought claims under the APA, 5 U.S.C. § 706(1) and (2) (Count III), and for mandamus, 28 U.S.C. § 1361 (Count IV).[4]  (Pls.' Compl., Sept. 1, 2017, ECF No. 1, ¶¶ 82–105.)

On November 3, 2017, with the leave of the Court, plaintiffs filed an amended complaint to challenge DOD's October 13th Guidance, instead of the August 17th policy, and to add a Count V alleging constitutional violations—specifically that defendants' conduct violates (1) the "uniform Rule of Naturalization" clause of the Constitution and (2) plaintiffs' rights under the Fifth Amendment's due process clause.  (Am. Compl. ¶¶ 121–30.)  On November 17, 2017, defendants filed the instant motion—invoking many arguments that the Court had previously addressed and rejected in its decision granting a preliminary injunction—and adding a challenge to plaintiffs' constitutional claims.  In addition, defendants argued that summary judgment should be granted based on the administrative record that it filed, but in making this argument, defendants relied primarily on a declaration by Stephanie Miller; a declaration that was not part of the administrative record and was executed by Stephanie Miller a month after the October

---

[4] Count I is a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, which is not a stand-alone cause of action.  *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 28 (D.D.C. 2014).  Count II is a claim for preliminary and permanent injunctive relief, but it does not include a distinct cause of action.

13th Guidance was adopted.  On December 1, 2017, plaintiffs filed their opposition, and on

December 8, 2017, defendants filed their reply.  The Court is now in a position to rule on

defendants' motion.

## ANALYSIS

## I.      LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim

has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it

does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff

has any evidence to back up what is in the complaint.'"  *Herron v. Fannie Mae*, 861 F.3d 160,

173 (D.C. Cir. 2017) (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  In ruling

on the motion, the Court must normally confine its review to the four corners of the complaint,[5]

presume reasonably well-pled factual allegations to be true, and draw all reasonable inferences in

favor of the plaintiff.  *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C.

Cir. 2015); *James v. D.C.*, 869 F. Supp. 2d 119, 120–21 (D.D.C. 2012).[6]

---

[5] The Court may also consider "documents attached to or incorporated by reference in the
complaint and documents attached to a motion to dismiss for which no party contests
authenticity." *Demissie v. Starbucks Corp. Office & Headquarters*, 19 F. Supp. 3d 321, 324
(D.D.C. 2014); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[6] As detailed *infra* Part IV.A and Part VII, summary judgment is not appropriate based on the
administrative record before the Court.

## II.    REVIEWABILITY OF DEFENDANTS' N-426 POLICY

Defendants argue that plaintiffs' claims under the APA fail as a matter of law because DOD's decision about whether and when to certify honorable service is a decision committed to agency discretion by law or because 8 U.S.C. § 1440 otherwise precludes judicial review.  The APA withdraws judicial review to the extent that "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or where "an agency action is committed to agency discretion by law," *id.* § 701(a)(2).  "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).  To determine "whether a matter has been committed solely to agency discretion, we consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action."  *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (citation omitted).  "[I]f the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," then it is unreviewable.  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  But "there is a strong presumption that agency action is reviewable," and Congress rarely draws statutes in terms so broad that there is no meaningful standard.  *Twentymile Coal Co.*, 456 F.3d at 156; *see also Inland Empire - Immigrant Youth Collective v. Elaine C. Duke*, No. ED-CV-17-2048PSGSHKX, 2017 WL 5900061, at *3–4 (C.D. Cal. Nov. 20, 2017) (noting that agency regulations and memoranda can serve as standards by which to judge an agency's discretion).

At the preliminary injunction stage, this Court found that DOD's N-426 policy is not committed to agency discretion because there were meaningful standards by which the Court can

judge the agency's action and because the granting or denying of an N-426 constituted a ministerial task. *Kirwa*, 2017 WL 4862763, at \*10–12. In the present motion, defendants repackage arguments made at the preliminary injunction stage, attempt to distinguish the Court's prior reasoning, and suggest that "courts should exercise great caution when adjudicating claims involving sensitive military and national-security matters." (MTD at 17.) Not one these arguments persuades the Court to reverse course.

The Court continues to adhere to its view the nature of the administrative action "as well as 8 U.S.C. § 1440's statutory and regulatory regime, provide [the] meaningful standard for judging DOD's N–426 certification decisions." *Kirwa*, 2017 WL 4862763, at \*10. Moreover, while courts should exercise caution when adjudicating claims involving matters of military affairs and national security, that caution does not give DOD carte blanche authority to act in contravention of the Constitution or applicable statutes. *See, e.g.*, *Wagafe v. Trump*, No. 2:17-CV-00094, 2017 WL 5989162, at \*1 (W.D. Wash. Nov. 28, 2017) ("The Government may not merely say those magic words—'national security threat'—and automatically have its requests granted in this forum."); *see also John Doe v. Donald Trump*, No. C17-0178, 2017 WL 6551491, at \*14–15 (W.D. Wash. Dec. 23, 2017) (refusing to hold that an immigration statute with a series of eligibility requirements committed action to agency discretion just because "the Secretary may have discretion over what the [ultimate] decision will be" on a refugee application); *Toyosaburo Korematsu v. United States*, 323 U.S. 214, 244 (1944) (Jackson, J., dissenting) ("But if we cannot confine military expedients by the Constitution, neither would I distort the Constitution to approve all that the military may deem expedient.").

III.    **APA § 706(1)**

Plaintiffs claim that DOD's N-426 policy violates 5 U.S.C. § 706(1), which authorizes a

reviewing court to "compel agency action unlawfully withheld." *Id.*[7] To show that DOD has

unlawfully withheld issuance of the N-426s, plaintiffs must demonstrate that DOD "failed to take

a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S.

55, 64 (2004). "This standard reflects the common law writ of mandamus, which the APA

'carried forward' in § 706(1)." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670

(D.C. Cir. 2016) (citing *Norton*, 542 U.S. at 63). "Thus, § 706(1) grants judicial review only if a

federal agency has a 'ministerial or non-discretionary' duty amounting to 'a specific,

unequivocal command.'" *Id.* (citing *Norton*, 542 U.S. at 63–64).

As explained in the Court's preliminary injunction opinion, defendants have a duty to

certify Form N-426s if the enlistee's service would qualify as honorable "based on an enlistee's

service record as it existed on the day he submitted the N–426." *Kirwa v*, 2017 WL 4862763, at

*11; *see also id.* at *15. In response, defendants argue that because they have the authority to

determine present military suitability, they can redefine past honorable service to require a

finding of present military suitability. The Army undoubtedly has the authority to judge an

enlistee's present suitability for service. Army Reg. 135-178 § 1-1; Army Reg. 635-200 § 1-1;

DOD Instruction 1332.14 § 3. DOD, however, does not have the right to rewrite 8 U.S.C. §

1440, an immigration statute that references *past* honorable service. 8 U.S.C. § 1440(a) ("Any

person who . . . *has served* honorably. . . .") (emphasis added); *see Meina Xie v. Kerry*, 780 F.3d

405, 408 (D.C. Cir. 2015).[8] Under "normal rule[s] of statutory construction . . . identical words

---

[7] Plaintiffs are not asserting an unreasonable-delay claim. (Pls.' Opp. to MTD, Dec. 1, 2017, ECF No. 49 ("Opp.") at 21.)

[8] Although defendants briefly mention *Chevron* deference (MTD at 11), *Chevron* deference would not be applicable given the lack of evidence that Congress delegated authority to DOD to interpret immigration statutes and the informal manner in which DOD reached its October 13th Guidance. *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *DeNaples v. Office of Comptroller of Currency*, 706 F.3d 481, 487 (D.C. Cir. 2013).

used in different parts of the same act are intended to have the same meaning." *Gustafson v.*
*Alloyd Co.*, 513 U.S. 561, 570 (1995). Every characterization of honorable service or separation
under honorable conditions in 8 U.S.C. § 1440 is defined in terms of past service. *See* 8 U.S.C. §
1440(a). Therefore, as plaintiffs allege, defendants are impermissibly conflating a present
suitability determination with a determination of past honorable service in their interpretation of
8 U.S.C. § 1440—a naturalization statute that, on its face, does not require certification of
present military suitability or active honorable service.[9]

## IV.    APA § 706(2)

Pursuant to 5 U.S.C. § 706(2)(A), the Court must decide if DOD's October 13th
Guidance is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with
law." 5 U.S.C. § 706(2)(A).[10]

### A.    Arbitrary and Capricious

DOD admits that prior to its October 13th Guidance, it had no formal department-wide
written guidance defining "honorable service" for purposes of certifying N-426s. (Tr. of PI Hr'g
at 57, Oct. 18, 2017, ECF No. 27 ("10/18/2017 Tr.") at 16–17, 24, 45, 66.) Still, as plaintiffs
have sufficiently pled (Am. Compl. ¶¶ 27, 46, 64, 89), and as the record before this Court
corroborates, *see Kirwa*, 2017 WL 4862763, at *12–13, prior to October 13, 2017, branches of
the military under DOD's control were proceeding under a non-formalized policy where Form
N-426s were certified based on MAVNI enlistees' past qualifying service. The October 13th

---

[9] This is also enough for plaintiffs' contrary-to-law claim, 5 U.S.C. § 706(2), to survive a motion
to dismiss.

[10] As defendants do for multiple claims, they argue that plaintiffs' amended complaint fails to
even plead an arbitrary-and-capricious claim. (MTD at n.12; Defs.' Reply in Supp. of MTD,
Dec. 8, 2017, ECF No. 50, at 14 n.7.) But these arguments are clearly refuted by the allegations
in plaintiffs' complaint. (*See, e.g.*, Am. Compl. ¶¶ 112–13.)

Guidance thus represents a dramatic departure from past practice.

"A central principle of administrative law is that, when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017). Specifically, the D.C. Circuit has long required a "reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Lone Mountain Processing, Inc. v. Sec'y of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013) (citation omitted). "Failing to supply such analysis renders the agency's action arbitrary and capricious." *Id.*

At an October 18th hearing before the Court, defendants made the curious argument that its October 13th Guidance was not subject to judicial review and required no explanation because no formal policy existed before October 13, 2017. (10/18/2017 Tr. at 41, 45.) Defendants reprise this position here.

But for purposes of arbitrary-and-capricious review, the APA "makes no distinction . . . between initial agency action and subsequent agency action undoing or revising that action." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014) (an agency's "interpretation [of a statute], whether old or new, must be consistent with the statute"); *Handley v. Chapman*, 587 F.3d 273, 282 (5th Cir. 2009) (explaining that courts review a policy change under the same standards as a "policy drafted on a blank slate"). Whether DOD is taking an initial agency action or changing a longstanding policy or practice, it still must provide a reasoned explanation for its action. *Fox Television Stations,*

*Inc.*, 556 U.S. at 515.

In an attempt to explain the change, defendants assert that

the October 13 Policy reflects DoD's desire to establish, for the first time, a clear and consistent process for N-426 certifications following a number of years in which the military was applying inconsistent standards for such determinations. Third Miller Decl. ¶ 11. The policy is consistent with DoD's longstanding intent; DoD has now simply formalized it. *Id.* ¶ 5.

(MTD at 26.) For this argument, defendants cite only the Third Miller declaration (Nov. 17, 2017, ECF No. 39-5), which was not part of the administrative record, but was prepared in November 2017 to provide an explanation for defendants' October 13th Guidance.

This explanation does not satisfy the agency's burden under 5 U.S.C. § 706(2). *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983); *see also League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, No. 3:12-CV-02271, 2014 WL 6977611, at *25 (D. Or. Dec. 9, 2014) ("The Court cannot determine that the Forest Service's conclusion was 'reasonable' because the record simply does not provide a rationale behind the decision. And Defendants' briefing, including Mr. Sciarrino's declaration, cannot explain the Forest Service's methodology in the absence of supporting materials in the record.").

Similarly, defendants' reliance on the third Miller declaration demonstrates why granting defendants' summary judgment motion would be inappropriate. Challenges to final agency action are normally resolved at summary judgment based on a review "limited to the administrative record." *Bluewater Network v. Salazar*, 721 F. Supp. 2d 7, 15 (D.D.C. 2010). "When the record is inadequate, a court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary.'" *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (citation

omitted).  However, "[t]he new materials should be merely explanatory of the original record and should contain no new rationalizations."  *Id.*

The Miller declaration is hardly "merely explanatory."  This declaration purports to offer new justifications for agency action—justifications that find no support in the administrative record complied by defendants or in the record that has been amassed during the extensive preliminary injunction proceedings in this action and in *Nio*.  *Cf. Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir 2016), *cert. denied*, 137 S. Ct. 282 (2016) ("The critical point is that the Vara Declaration contains 'no new rationalizations'; it is 'merely explanatory of the original record,' and thus admissible for our consideration.") (citation omitted).

The APA requires an agency to explain the rationale for its decision in order to demonstrate that the agency reached its decision in a well-reasoned manner after considering appropriate factors.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"); *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (noting that arbitrary-and-capricious review "involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons").  APA review may be limited, but it involves more than a court rubberstamping action based on bare declarations from the agency amounting to "trust us, we had good national security reasons for what we did."[11]  *See Wagafe*, 2017 WL 5989162, at *1; *see also Patterson v. Comm'r of Soc. Sec. Admin.*,

---

[11] Relatedly, much of the Third Miller Declaration is either belied by, or unsupported by, the documents that defendants have brought to the Court's attention during the preliminary injunction proceedings.  For example, the declaration cites documents from 2010–2014 that related to security risks and military suitability determinations but those documents never mention honorable service determinations.  (*See* Third Miller Decl. ¶ 6.)  The declaration also states that "it has always been DOD's intent to require the completion of a suitability for service determination well prior to accession and a certification of honorable service for the purposes of

846 F.3d 656, 663 (4th Cir. 2017) ("[T]he dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work.").

## B.    Retroactivity

The need for a reasoned explanation on the record is even more important where, as here, the agency appears to be retroactively applying its new policy.  As explained in the Court's preliminary injunction opinion, the October 13th Guidance retroactively changes standards and procedures applicable to MAVNIs who enlisted prior to October 13, 2017.  *Kirwa*, 2017 WL 4862763, at *13–14.

"As [the D.C. Circuit] ha[s] lamented, the retroactivity rules are easy to state, less easy to apply."  *Arkema, Inc. v. EPA*, 618 F.3d 1, 7 (D.C. Cir. 2010).  "Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity."  *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994).  As Justice Holmes once said, "[p]erhaps the reasoning of the cases has not always been as sound as the instinct which directed the decisions."  *Danforth v. Groton Water Co.*, 59 N.E. 1033, 1034 (Mass. 1901).  Broadly speaking, "[t]he conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a

---

naturalization" (*id.* ¶ 5) but it cites no documents, because, as far as the Court is aware, there is no evidentiary support for this intent.  As best as can be determined, Miller's explanation for the October 13th Guidance is a post-hoc rationalization that was adopted after litigation was instituted and after the Court expressed its skepticism that imposition of an active-duty requirement would comport with 8 U.S.C. § 1440.  *Kirwa*, 2017 WL 4862763, at *12.

relevant past event." *Landgraf*, 511 U.S. at 270.

In the administrative context, "[g]enerally, an agency may not promulgate retroactive rules without express congressional authorization." *Arkema*, 618 F.3d at 7.[12] At the very least, precedent explains that a retroactive agency action is impermissible if it is arbitrary and capricious. *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 159 (D.C. Cir. 2010).

In arguing against retroactivity, defendants claim that they have only interpreted 8 U.S.C. § 1440, yet, even interpretations can be impermissibly retroactive if they "change[] the legal landscape." *Arkema*, 618 F.3d at 7; *see also Nat'l Min. Ass'n v. Dep't of Labor*, 292 F.3d 849, 860 (D.C. Cir. 2002).[13]  Under D.C. Circuit precedent, a new rule or policy changes the legal

---

[12] As now Justice Gorsuch explained,

> [T]he more an agency acts like a legislator—announcing new rules of general applicability—the closer it comes to the norm of legislation and the stronger the case becomes for limiting application of the agency's decision to future conduct. The presumption of prospectivity attaches to Congress's own work unless it plainly indicates an intention to act retroactively. That same presumption, we think, should attach when Congress's delegates seek to exercise delegated legislative policymaking authority: their rules too should be presumed prospective in operation unless Congress has clearly authorized retroactive application.

*De Niz Robles v. Lynch*, 803 F.3d 1165, 1172 (10th Cir. 2015).

[13] In the related *Nio* case counsel for DOD appeared to acknowledge that the October 13th Guidance changed the legal landscape:

> THE COURT: . . . I think that to say you can't be surprised that you find yourself with a lawsuit. The rules of the game have changed whether you have decided there's good reason for some of the rules and I've decided there's not good reason for some of the other rules. You have to tell me that the legal landscape has changed.

> MR. KISOR: Yes, your Honor. And there's part of the enlistment contract that says I understand the laws and regulations may change at anytime and that that may affect me and they've all signed that. But your point, I take your point, your Honor, which is that the Department of Defense has to make the best decision it can with the information it has.

(*Nio*, Tr. of PI Hr'g, Oct. 31, 2017, ECF No. 75 ("10/27/2017 Tr.") at 18.)

landscape if it "is 'substantively inconsistent' with a prior agency practice and attaches new legal consequences to events completed before its enactment." *Arkema*, 618 F.3d at 7 (citation omitted). "Even where a rule merely narrows 'a range of possible interpretations' to a single 'precise interpretation,' it may change the legal landscape in a way that is impermissibly retroactive." *Id.*; *see also Nat'l Min. Ass'n*, 292 F.3d at 859. Put another way, if the new rule "effects a substantive change from the agency's prior regulation or practice," then it is impermissibly retroactive. *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 14 (D.C. Cir. 2011) (citation omitted).

The October 13th Guidance changes the legal landscape: DOD has never applied the criteria listed therein to MAVNI enlistees before now. By promulgating the October 13th Guidance, DOD attaches new legal meaning to the concept of honorable service in the Selected Reserve. Even assuming *arguendo* that DOD has authorization to interpret an immigration statute, DOD's "interpretation" of 8 U.S.C. § 1440 clearly marks a substantive change from its past practice of certifying a Form N-426 based on an enlistee's past service at the time he or she submits the N-426 for certification.

Furthermore, as observed by now Justice Gorsuch, "if the separation of powers doesn't forbid this form of decisionmaking outright, . . . second-order constitutional protections sounding in due process and equal protection, as embodied in our longstanding traditions and precedents addressing retroactivity in the law" might otherwise constrain retroactive application. *De Niz Robles v. Lynch*, 803 F.3d 1165, 1171–72 (10th Cir. 2015) (Gorsuch, J.). Any retroactive policy must have "sufficiently significant statutory interests" to counterbalance any "resulting inequities" from the retroactive agency action. *Chadmoore Commc'ns, Inc. v. FCC*, 113 F.3d 235, 240 (D.C. Cir. 1997); *see also Garvey v. Nat'l Transp. Safety Bd.*, 190 F.3d 571, 584 (D.C.

Cir. 1999) ("An agency is also barred from applying a new rule in the adjudication in which it is announced if doing so would work a 'manifest injustice.'") (citation omitted). Before the October 13th Guidance, MAVNI enlistees had a right to apply for an expedited path to citizenship, but DOD's new procedures rob plaintiffs of this opportunity. Moreover, the Court remains convinced, based on the allegations in the complaint and the record before it, that DOD's application of the October 13th Guidance would result in serious inequities to the MAVNI enlistees that are not counterbalanced by any significant statutory interests. *Kirwa*, 2017 WL 4862763, at *14.

In its motion to dismiss, defendants argue that the October 13th Guidance does not attach new legal consequences to events completed before its enactment, but instead, it only upsets expectations, because

> Section II of the policy—the section applicable to the Plaintiffs here—applies only to certifications made on or after October 13, 2017, not to any prior certification decisions. The fact that Plaintiffs enlisted prior to the date of the new policy does not make the policy retroactive. . . . Plaintiffs, moreover, were put on notice and acknowledged at the time of their enlistment that "[l]aws and regulations that govern military personnel may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces REGARDLESS of the provisions of this enlistment/reenlistment document."

(MTD at 29.) However, prospective changes are not the same as retroactive changes to preexisting and longstanding policies. Plaintiffs were put on notice that their status, pay, allowances, etc. could change going forward, but would defendants argue, for example, that they could ask for pay back from Selected Reservists because they lowered compensation going forward? That is precisely what defendants purport to do with the October 13th Guidance, by redefining the meaning of honorable service already performed. As alleged by plaintiffs, defendants are attaching new legal consequences to events completed before the October 13th

Guidance.  In effect, as of October 13, 2017, honorable service determinations require a finding

of present military suitability, which had never been required before that date.  *See Arkema*, 618

F.3d at 7.

Defendants also suggest that the new policy does not change the legal landscape because

they always intended to put a program like this into effect:

> The new policy also does not change the legal landscape. Although no formalized
> process for N-426 certification existed prior to October 13, 2017, it had always
> been DoD's intent—since the creation of the MAVNI program—to require the
> completion of a suitability-for-service determination prior to a certification of
> honorable service, given the need to verify that an enlistee is qualified to serve.
> *See* Third Miller Decl. ¶ 5.

(MTD at 30.)  Defendants cite no authority for the proposition that an agency's unexpressed

intention justifies an otherwise impermissible retroactive change in policy or practice, and this

Court will not sanction retroactive action on the basis of an agency's hidden intent.

*See Landgraf*, 511 U.S. at 270 ("Since the early days of this Court, we have declined to

give retroactive effect to statutes burdening private rights unless Congress had made clear its

intent.").

## V.  CONSTITUTIONAL CLAIMS

Plaintiffs also allege constitutional claims in Count V under the "Uniform Rule of

Naturalization Clause," U.S. Const. art. 1, § 8, cl. 4, and under the Fifth Amendment's Due Process

Clause.  The Court finds that plaintiffs have stated facially plausible constitutional claims under the

Naturalization Clause, and under the Due Process Clause for procedural due process, but it dismisses

plaintiffs' claim for violating substantive due process.

### A.  Naturalization Clause

The Constitution vests Congress with the power "[t]o establish an uniform Rule of

Naturalization."  U.S. Const., art. 1, § 8, cl. 4.  Plaintiffs claim that DOD's October 13th Guidance

unlawfully interferes with Congress's authority "by creating preconditions to naturalization that Congress did not authorize." (Pls.' Opp. to MTD, Dec. 1, 2017, ECF No. 49 ("Opp.") at 36.)

Defendants argue that plaintiffs do not have standing to assert a claim under the Rule of Naturalization Clause because "[t]he Clause does not on its face extend or preserve any particular rights belonging to individuals like Plaintiffs here." (MTD at 33.) There is a lack of precedent on point, but at least one other district court has held that plaintiffs have standing to assert a claim against an agency under the theory that its actions violate the Naturalization Clause. *See Wagafe v. Trump*, No. C17-0094, 2017 WL 2671254, at *7 (W.D. Wash. June 21, 2017).

In *Wagafe v. Trump*, the plaintiffs alleged that USCIS unlawfully implemented a program imposing extra-statutory eligibility criteria on applications for citizenship or adjustment of immigrant status. *Id.* at *1. The defendants argued, as they do here, that the plaintiffs lacked standing because there was no private right of action under the Naturalization Clause and, even if the program violated the clause, Congress, not the plaintiffs, would be the injured party. *Id.* at *7. The district court rejected these arguments, finding that the plaintiffs had standing to assert a violation of the Naturalization Clause because they suffered injury from having to undergo additional requirements not imposed by Congress. *Id.* This Court finds the reasoning of *Wagafe* to be persuasive and will not dismiss plaintiffs' claim for lack of standing.

Defendants also argue that "Plaintiffs have not plausibly alleged that Defendants have violated the Rule of Naturalization . . . [because] [n]either the language of § 1440(a) nor any other provision of the INA precludes DoD from implementing sensible procedural rules, including background investigations, in connection with its honorable-service determinations." (MTD at 34.) But the crux of plaintiffs' complaint is that 8 U.S.C. § 1440 precludes DOD from implementing the October 13th Guidance and that DOD's policies were not "sensible" or

implemented in a lawful manner.  To credit defendants' argument, the Court would have to ignore plaintiffs' well-pled allegations and to do so would be improper on a motion to dismiss. *See Herron*, 861 F.3d at 173.

## B. Due Process Clause

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Plaintiffs claim that DOD's October 13th Guidance "violates their Due Process rights by denying or impairing their statutory right to seek naturalization."  (Opp. at 36.)  Plaintiff allege violations of procedural due process and substantive due process.

### 1. Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  To state a facially plausible claim for violation of procedural due process a plaintiff must allege that he or she has a (1) protected liberty or property interest that the defendant has (2) deprived him or her of without adequate procedural protections.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–77 (1972); *Mathews*, 424 U.S. at 332–35.  Plaintiffs allege that defendants' October 13th Guidance deprives them of a protected property interest—under 8 U.S.C. § 1440 and related federal immigration statutes—to apply for expedited citizenship and obtain immigration benefits "for which they are eligible and seeking."  (Am. Compl. ¶ 129.)

Defendants argue that "Plaintiffs cannot claim a protected property or liberty interest now in the mere possibility that they will eventually be deemed eligible for citizenship and thereafter naturalized" (MTD at 35), and that plaintiffs are essentially claiming an interest in having DOD certify their N-426s.  (Defs.' Reply in Supp. of MTD, Dec. 8, 2017, ECF No. 50, at 22.)

However, courts "have held that naturalization applicants have a property interest in seeing their applications adjudicated lawfully." *Wagafe*, 2017 WL 2671254, at *8. At this stage the Court need not define the exact contours of plaintiffs' protected property interest. Plaintiffs have sufficiently alleged that 8 U.S.C. § 1440 bestows a right to apply for expedited citizenship in exchange for lengthy military service and that defendants are depriving them of this right by failing to certify their past honorable service. *See Brown v. Holder*, 763 F.3d 1141, 1147–48 (9th Cir. 2014) ("Brown had such a protected interest in being able to apply for citizenship, both as an adult and derivatively through his mother as a minor. As the government conceded at oral argument, Brown had a right to apply for citizenship, established by federal law.")

Defendants also contend that plaintiffs have received all the process they are due because "categorical agency determinations do not implicate the Due Process Clause. There is no constitutional requirement that members of the public receive notice and an opportunity to be heard before an agency may implement a new policy." (MTD at 35.) Defendants are correct that agency rules of broad applicability normally do not implicate the same due-process concerns typical of agency adjudications involving individual rights. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915); *see also Sw. Airlines Co. v. Transp. Sec. Admin.*, 554 F.3d 1065, 1074 (D.C. Cir. 2009) ("There we appeared to assume the decision was adjudicative, and thus belonged to the class of cases for which due process is typically, and almost exclusively, applicable.")

But this case is not the normal case. Plaintiffs are challenging specific aspects of the October 13th Guidance as applied to them, and allege that it summarily denies them the right to receive honorable service certifications they could have received prior to the October 13th Guidance. These allegations implicate due-process concerns. *See Wagafe*, 2017 WL 2671254,

at *8 ("Here, Plaintiffs allege that all the statutory requirements have been complied with, and the application of CARRP's extra-statutory requirements deprives Plaintiffs of the right to which they are entitled. This is sufficient to allege a violation of due process."); *see also Greene v. Lujan*, No. C89-645Z, 1992 WL 533059, at *8 (W.D. Wash. Feb. 25, 1992), *aff'd sub nom. Greene v. United States*, 996 F.2d 973 (9th Cir. 1993), and *aff'd sub nom. Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995) ("The protections of the Fifth Amendment would be seriously impaired if this Court allowed the Government to cut off benefits without a hearing by creating new eligibility requirements and then summarily holding that current benefit recipients do not meet the new requirements.")

### 2.    Substantive Due Process

Plaintiffs allege that plaintiffs' right to apply for naturalization "gives rise to a fundamental liberty interest." (Opp. at 43.) Defendants argue that plaintiffs have not sufficiently alleged a claim for violation of substantive due process rights.

Plaintiffs' substantive due process claim asks this Court to recognize a new fundamental right under the Constitution. As the Supreme Court recently explained, recognizing a new fundamental right

> requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. That process is guided by many of the same considerations relevant to analysis of other constitutional provisions that set forth broad principles rather than specific requirements. History and tradition guide and discipline this inquiry but do not set its outer boundaries.

*Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015) (internal citation omitted). The D.C. Circuit has been reticent to recognize new substantive due process rights. *See Aka v. United States Tax Court*, 854 F.3d 30, 34–35 (D.C. Cir. 2017). Moreover, although the D.C. Circuit has yet to address the issue since the Supreme Court revised the substantive-due-process inquiry in

*Obergefell*, the D.C. Circuit has held that a claim for a substantive due process violation must carefully describe the "asserted fundamental liberty interest." *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (citation omitted); *Sanders v. D.C.*, 522 F. Supp. 2d 83, 91 (D.D.C. 2007). This has not been done by plaintiffs. Therefore, the Court dismisses their substantive due process claim.

## VI. MANDAMUS

"To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Defendants argue that

> Plaintiffs are not entitled to invoke the Mandamus Act, 28 U.S.C. § 1361. Mandamus is functionally coextensive with the relief Plaintiffs seek under APA § 706(1). Plaintiffs are either entitled to that relief or they are not, but they cannot invoke mandamus as a fallback in the event that their core APA claim fails.

(MTD at 37.) Plaintiffs concede that if they succeed on their APA claims, the Court need not reach their mandamus claims, but maintain that "until the Court's final order granting APA relief on these grounds, Plaintiffs are not precluded from pleading their alternative relief." (Opp. at 36 n.22.)

The Court agrees. Normally, if a Court has jurisdiction to grant relief under the APA, "it need not reach the question of whether mandamus is available to compel action by the agency." *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 53 (D.D.C. 2008). However, defendants continue to dispute the Court's authority to grant plaintiffs relief under the APA, and it would be premature to dismiss a cause of action on the ground that an adequate alternative remedy exists before

determining the contours of that remedy and plaintiffs' entitlement to that remedy.[14]

## VII.   SUMMARY JUDGMENT

As detailed *supra* Part IV.A, to support their motion for summary judgment defendants primarily rely on a declaration that was executed after the agency action at issue here, which, as previously explained, cannot be treated as part of the administrative record.  In addition, D.C. Local Civil Rule 7(h)(2) requires "motions for summary judgment and oppositions thereto [to] include a statement of facts with references to the administrative record."  Defendants provided an administrative record with an index but no statement of facts referencing that record.  Thus, because defendants rely on a declaration that is not a part of the administrative record, and because they failed to comply with D.C. Local Civil Rule 7(h)(2), the Court cannot evaluate defendants' motion for summary judgment against the administrative record as presently compiled by defendants.  Therefore, the Court denies without prejudice defendants' motion for summary judgment.  *Bluewater Network*, 721 F. Supp. 2d at 15; *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) ("This circuit has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court.")


## CONCLUSION

For the reasons stated above, the Court denies without prejudice defendants' motion for summary judgment.  The Court grants defendants' motion to dismiss plaintiffs' constitutional substantive-due-process claim, but otherwise denies defendants' motion to dismiss with

---

[14] For similar reasons, the Court finds that it need not reach defendants' other arguments about appropriate relief under certain provisions of the APA because multiple claims under the APA and the Constitution remain viable at this stage and could entitle plaintiffs to the relief they seek.

prejudice.  A separate order, accompanies this Memorandum Opinion.

/s/  *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   January 11, 2018