```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
        -----------------------------X

LUCAS CALIXTO, et al,


                              Plaintiffs


                 v.          Civil Action 18-1551-ESH

U.S. DEPT. OF ARMY, et al.,


                              Defendants


        -----------------------------X

KUSUMA NIO, et al.,              Civil Action 17-998-ESH

                              Plaintiffs

        v.

U.S. DEPT. OF
HOMELAND SECURITY, et al.,


                              Defendants


        -----------------------------X

MAHLON KIRWA, et al.,              Civil Action 17-1793

                              Plaintiffs


        v.

U.S. DEPT. OF DEFENSE, et al.,


                              Defendants.


        -----------------------------X


                    Washington, D.C.
                    Wednesday, July 29, 2020
                    2:30 p.m.

          TRANSCRIPT OF VIDEO STATUS CONFERENCE
        BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
             UNITED STATES DISTRICT JUDGE
```

```
APPEARANCES:


For the Plaintiffs: Jennifer M. Wollenberg, Esq.
                    Douglas Baruch, Esq.
                    Kayla Kaplan, Esq.
                    Neaha Raol, Esq.
                    MORGAN, LEWIS & BOCKIUS LLP
                    1111 Pennsylvania Ave. NW
                    Washington, DC 20004
                    (202) 739 5313

For the Defendants: Colin Abbot Kisor, Esquire
                    Eliana Perez, Esquire
                    Carlton Frederick Sheffield, Esquire
                    U.S. DEPARTMENT OF JUSTICE
                    Civil Division, Office of
                    Immigration Litigation
                    P.O. Box 878, Ben Franklin Station
                    Washington, D.C. 20044
                    (202) 532-4331

                    Jeremy Allen Haugh, AUSA
                    U.S. ATTORNEY'S OFFICE FOR D.C.
                    555 Fourth Street, NW
                    Washington, DC 20530
                    (202) 252-2574


                    Sarah Lake Vuong, Esquire
                    Claudia Young, Esq.

                    Cara Behar, Esquire
                    U.S. DEPT. OF JUSTICE
                    USCIS
                    Office of Immigration Litigation
                    450 Fifth Street, N.W.
                    Washington, D.C. 20001
                    (202) 532-4281


Official Court Reporter: Lisa Griffith
U.S. District Courthouse, Room 6507
Washington, D.C. 20001
(202) 354-3247
```

P R O C E E D I N G S

1

THE DEPUTY CLERK:  This is 17-1793, Mahlon Kirwa,

2

et al. versus United States Department of Defense, et al.

3

THE COURT:  We know Ms. Wollenberg is here for

4

plaintiffs.  You know who is on the phone with her.

5

Mr. Swinton for the government.

6

Is there anybody with you on the phone, Mr.

7

Swinton?

8

MR. SWINTON:  No, it's just me, Your Honor.

9

THE COURT:  We just had a discussion off the

10

record.  Mr. Swinton is leaving his post on the 31st.  I

11

have suggested a possible way to resolve this matter.

12

I think you are the only person who knows enough

13

about it to intelligently address it now before you leave.

14

So if there is a better way to address, I'm perfectly happy

15

to take it under advisement.

16

But I think in this instance, it won't require any

17

kind of class approval.  So you avoid all the problems of

18

notice.  You avoid all the problems of certifying that the

19

resolution is fair and reasonable under Rule 23.  What you

20

have is a permanent injunction based on the injunction the

21

Court entered after a PI.  Otherwise, it will be a long way

22

off because, it seems to me, you have to have notice and you

23

have to have a preliminary hearing and a final hearing.  So

24

unless I'm missing something, is probably the only way you

25

1    can settle this without major class action notification.

2              Is there anything I'm missing there, Mr. Swinton

3    or Ms. Wollenberg?

4              MS. WOLLENBERG:  Not from plaintiffs' perspective,

5    Your Honor.

6              MR. SWINTON:  No, Your Honor.

7              THE COURT:  If the two counsel could talk.  If it

8    is no more than saying that the preliminary injunction has

9    been, with agreement with the parties, a permanent

10   injunction in the case  and the case has hereby ended.  The

11   plaintiffs have succeeded in getting a permanent injunction.

12             Now, we will now call the Nio case.  I don't think

13   there is anything else to discuss in Kirwa.  It strikes me

14   that we've gotten over 1900 people through.

15             How many have you certified, you've certified some

16   1900, Mr. Swinton?  You've given N-426s.

17             MR. SWINTON:  Your Honor, the reporting charts

18   from the Army have different numbers than what Ms.

19   Wollenberg cited.  The most recent one that we submitted I

20   think showed 1,695 class members have been certified.

21             THE COURT:  They have gotten an N-426.

22             MR. SWINTON:  Correct.

23             THE COURT:  We've had more than that apply for

24   naturalization.  So some of them already had N-426s.  There

25   were about 500 that had them from before.  So these are

1    additional people beyond the MAVNIs who had 426s.  The class

2    is defined as only MAVNIs?

3          MR. SWINTON:  In the selected reserves.

4          THE COURT:  Ms. Wollenberg indicated before that

5    she thought the potential class was 2,700.  And that 2,000

6    of them have applied for naturalization.  Is that correct?

7          MS. WOLLENBERG:  Yes, Your Honor.  We know that

8    naturalization number from the reporting in the Nio case.

9          THE COURT:  Right.  Well, we know that 1,957 have

10   been naturalized.  And we are aware that there may be 41

11   pending or -- 68 are pending.  So that's the total number in

12   the Nio class, which would be the same definition, except

13   that some people already had an N-426.  So if you have 1,957

14   and 68, that's about 2035.  So that is sort of the universe

15   in Nio.

16         All right.  We'll now move on to the Nio case.

17         THE DEPUTY CLERK:  This is Civil Action 17-998,

18   Nio et. al versus Department of Homeland Security.  All the

19   plaintiffs are present with Ms. Wollenberg.  I'm just going

20   to ask that the defense who is on the video introduce

21   themselves for the record.

22         MR. SHEFFIELD:  This is Fred Sheffield for the

23   Department of Justice.

24         THE COURT:  Can you tell us who is on the phone?

25   With you is Mr. Kisor?

1          MR. SHEFFIELD:  Correct.  I will let folks speak

2   up on the phone because I'm not sure who called in.

3          MR. FUCCI:  Good afternoon, Your Honor.  This is

4   Michael Fucci from the Department of Defense.

5          THE COURT:  And we have Ms. Vuong?

6          MS. VUONG:  Yes, Ms. Vuong representing DOJ.

7          THE COURT:  Ms. Young?

8          MS. YOUNG:  Claudia Young, USCIS.

9          THE COURT:  Christopher Arendt?

10          MR. ARENDT:  I'm here.

11          THE COURT:  And you are from USCIS?

12          MR. ARENDT:  No, Ma'am, I am from Department of

13   Defense.

14          THE COURT:  Okay.  Then we have Major Meisner.

15   Anybody else for the defendants?

16          MS. BEHAR:  Cara Behar from USCIS.

17          THE COURT:  Mr. Swinton, are you still there?

18          MR. SWINTON:  Yes.

19          THE COURT:  I don't insist that you stick around.

20   But I want you and Ms. Wollenberg to file a joint status

21   report on the third of August to tell us where we are in

22   terms of closing this case out.  All right?

23          MR. SWINTON:  Would it be possible to have that

24   date be the 4th or 5th of August, just to give my successor

25   time to handle it?  I will be turning in all my equipment in

1    this Friday, the 31st.

2              THE COURT:  It's all right with me.

3              MR. SWINTON:  All right.  Thank you.

4              THE COURT:  The 5th of August, a joint status

5    report with the plaintiffs to tell us where we are in

6    resolving this matter and closing it out.

7              Now we move on to Nio.  Let us quickly just

8    address some specifics that were raised by the plaintiffs.

9              Mr. Sheffield, I assume you got this pleading,

10   302, last night.

11             MR. SHEFFIELD:  I did, Your Honor.

12             THE COURT:  Okay.  I hate to be asking this

13   question again.  Where do we stand with Y. Y.?

14             MR. SHEFFIELD:  Y. Y. has a pending N-336.  USCIS

15   has advised that there is an e-mail correspondence

16   representing plaintiffs' response to the 302 that notes that

17   USCIS had indicated a couple of weeks ago that there was

18   still some sort of USCIS background check pending which was

19   hold up on that application.

20             USCIS has since advised me that that background

21   check has now been completed.  So there is no longer any

22   impediment to adjudicating the application, and an

23   adjudication on that N-426 is expected in, I would say a

24   matter of days rather than weeks.

25             THE COURT:  What do we do about removing the stain

1    on this poor woman's record?  Where will it say that she

2    wasn't discharged?

3              MR. SHEFFIELD:  Your Honor, I don't know how the

4    application is going to turn out.  I think that's

5    something, if she is not satisfied with USCIS's position on

6    her naturalization application, she can obviously raise that

7    in a Federal District Court proceeding.

8              So to the extent that, based on my review of

9    plaintiffs' response last night, I did find it significant

10   that 11 of the 13 pages were devoted to one case.  We

11   started with -- we're down to focusing on one case.  I

12   understand that some of these cases are going to be more

13   complicated than others.  But again, the role in this case

14   is to get everyone to adjudication and that's where we are

15   with Y. Y.

16             THE COURT:  Yes, but we would rather not have

17   people improperly arrested.  She got arrested for lying

18   about something that -- I don't know that anybody in their

19   right mind could understand what was going on.  It's

20   unbelievable that they swept in and arrested her.

21             So Ms. Wollenberg, what do you want to know here?

22   You are going to get a response shortly.  And Mr. Sheffield

23   will notify us.  Do you think two weeks?

24             MR. SHEFFIELD:  I think we should have a decision

25   some time within two weeks, yes.

1          MS. WOLLENBERG:  Yes, Your Honor.  I was disturbed

2    just by Mr. Sheffield's response in terms of them saying

3    they don't know how the application is going turn out.  For

4    one, I question whether that is accurate or whether Mr.

5    Sheffield does know.

6          And her application was decided once already.

7    They represented to this Court that, when they decide an

8    application, they look at every factor for naturalization.

9    And that they looked at every factor for her, and the only

10   one where she was found wanting was on this discharge that

11   never happened.  Now it sounds like they plan on denying her

12   on some kind of, I assume, bogus, trumped up reason.  I

13   think this woman has been drug through enough.

14         THE COURT:  I'm not going to investigate one

15   person.  Mr. Sheffield is going give us an answer.  Mr.

16   Sheffield, do you know what they're going to do with this

17   woman?  Do you have any clue?

18         MR. SHEFFIELD:  No, the only reason is I just have

19   not had time to ask for -- this case has not been on my

20   radar until this morning at 7 a.m. when woke I up and read

21   the report.

22         THE COURT:  What about one of the people who are

23   with you?  Who is the USCIS lawyer?

24         MR. SHEFFIELD:  Your Honor, I think we would

25   rather let USCIS make its decision and let the decision

1   speak for itself rather than previewing it when a decision

2   has not yet been finalized.

3        THE COURT:  I just want to know whether two weeks

4   is realistic and whether we're going to have a decision on

5   this person.

6        MR. SHEFFIELD:  Yes, I've been advised --

7        MS. BEHAR:  Two weeks, we do expect to have a

8   decision within two weeks.

9        THE COURT:  This is Ms. Behar speaking?

10       MS. BEHAR:  Yes.

11       THE COURT:  All right.  Let's see, two weeks from

12  today puts us Wednesday, August 5th.  Correct?

13       MR. SHEFFIELD:  If we could get one more week, the

14  12th.

15       THE COURT:  Two weeks.  You will be here.  So we

16  will want you to give us a notification as to the decision

17  on this woman.  Hopefully -- okay.  The 12th of August.

18       We have one other specific person whose initials

19  are D. W.

20       MR. SHEFFIELD:  Where is that, Your Honor, in the

21  302?

22       THE COURT:  Yes, it's in the 302.  It comes up in

23  the paragraph -- it's page 12.  The initials are D. W.

24       MR. SHEFFIELD:  It's on page 12?

25       THE COURT:  Yes, of 302.

1            Do you know any more about him, Ms. Wollenberg,

2    D.W.?

3            MS. WOLLENBERG:  Yes, Your Honor.  I know who that

4    is.  What we identified as the concern here is that, in the

5    report that the defendants provided, when you sort the

6    report and look at the people who have been identified as

7    having unrevoked effective discharges, that is still listed

8    for, I believe it's 28 individuals, which we know is not

9    accurate because, in the Calixto case and otherwise, they

10   reported, I think there were only 13 or so individuals who

11   were actually discharged.  So, we just know 28 is not right.

12           With respect to D. W., I believe my memory is that

13   he was one of the ones who had been discharged but then was

14   offered reinstatement and accepted it.  He is still having a

15   number of problems because, in the Army system, they don't

16   recognize him as being reinstated.

17           We are concerned that when he does get to

18   interview, which he is not to interview yet -- that's a

19   different problem -- but when he does get to interview, that

20   USCIS is going to wrongly assume that he is effectively

21   discharged.

22           THE COURT:  How many people would you say are

23   unrevoked that shouldn't be?

24           MS. WOLLENBERG:  Your Honor, I don't have an exact

25   number.  When you sort -- it says 28, I believe.  We know

1    that that number is not accurate, given the reporting in the

2    Calixto case where I believe they had said there are only

3    around 13.

4              MR. SHEFFIELD:  Right.  Your Honor, if I could

5    just weigh in here.  I think it was back in our December

6    report that we noted and acknowledged that there was a

7    problem in the way the reports for Nio were being produced

8    with respect to the discharge information.  I think that's

9    ECF 289, the December 2019 report.  We basically

10   acknowledged that there was a problem there; and at that

11   point, the better information for purposes of discharges is

12   coming from reports that are filed in Calixto.

13             So to the extent there is disparity between the

14   information about discharges in the Nio reports and Calixto,

15   Calixto is the more accurate information.

16             THE COURT:  Calixto tells us what, Ms. Wollenberg?

17             MS. WOLLENBERG:  With respect to D. W., it tells

18   us that he is not discharged.

19             THE COURT:  Not discharged?

20             MS. WOLLENBERG:  Correct.

21             THE COURT:  So isn't that right?

22             MS. WOLLENBERG:  On the Nio report, they identify

23   him as discharged.

24             THE COURT:  Wait a minute.  How many are the

25   people on the Calixto report that you would think are listed

1  as discharged and that's not accurate?

2          MS. WOLLENBERG:  I think you said Calixto, Your

3  Honor.  And I think you meant Nio.

4          THE COURT:  No.  How many in the Calixto reporting

5  are shown as being discharged that your argument shouldn't

6  be listed as discharged?

7          MS. WOLLENBERG:  Your Honor, at this point, I'm

8  not sure that we have problems with the reporting in the

9  Calixto case about discharges.  Where we have is in the Nio

10 reporting.  The bigger problem with have and concern we had

11 is that the USCIS personnel field offices who are

12 adjudicating these applications don't seem to be well

13 informed about what, you know, basically the fact that none

14 of the people that they are currently adjudicating are

15 actually discharged.

16          I think it's almost at that point right now that

17 the remaining pending class members in Nio that really none

18 of them are discharged.  So, I just want to make sure that

19 when somebody gets to the field office, their application

20 isn't being held up or their application isn't being

21 potentially denied under that false understanding.

22          MR. SWINTON:  Your Honor, Ms. Behar can correct me

23 if I'm wrong.  But I don't believe the field offices are

24 making decisions about who they believe is discharged based

25 on what is in our report.  That information is compiled;

1    it's an interagency process.  We do the best that we can,

2    given the challenges there.  But we acknowledge that there

3    are inaccuracies in our reporting for discharges.  So I

4    don't think there is anything to worry about with respect to

5    immigration services offices making decisions based on

6    information in our reporting.

7            THE COURT:  Is there still a line where if there

8    is a specific person who wasn't discharged and it gets over

9    to the USCIS side because there is a Nio messed up

10   reporting, that they can clarify it?

11           MR. SWINTON:  Yes, Your Honor.  There's--

12           MS. BEHAR:  This is Cara Behar from USCIS.

13           I just want to confirm that there would not be a

14   denial of naturalization to any applicant who is listed on

15   the Nio report solely based on information in that report.

16   We would be looking at the N-426, a DD-214, if there is one,

17   any other information in the file.  The information on the

18   report to the Court and to the plaintiffs would not be a

19   concern.

20           THE COURT:  So if one of these kinds of problems

21   arise, who is plaintiffs' counsel supposed to contact?  Is

22   it the complaint box or how do we make sure that no one is

23   getting tripped up the way this poor Y.Y. got tripped up or

24   is being haunted by a discharge notice or notation?

25           Ms. Behar?

1          MS. BEHAR:  Yes.  This may be something that could

2     be brought to the Nio in-box.  I think in general it would

3     be something that would be raised through a request for

4     evidence or a notice of (inaudible) deny or something like

5     that, that would be addressed within the confines of the

6     specific case.  But it could be brought to Nio in-box if

7     necessary.

8          THE COURT:  Okay.  I don't think that -- so this

9     D. W. is listed correctly in the Calixto as being not

10     discharged.  That is the current state of affairs.

11          Correct Ms. Wollenberg?

12          MS. WOLLENBERG:  Yes, Your Honor.  The Army has

13     reported that he is currently serving.

14          THE COURT:  Okay.  Is he currently serving?

15          MS. WOLLENBERG:  He has problems because the Army

16     personnel has not been told that his prior invalid discharge

17     was revoked.

18          THE COURT:  Okay.  I think you need to put this in

19     the in-box, I guess.  But he is listed as having not been

20     discharged.

21          MS. WOLLENBERG:  In the Calixto action, yes, Your

22     Honor.

23          THE COURT:  Does he have an N-426?

24          MS. WOLLENBERG:  Yes, Your Honor.  He should be

25     scheduled for an interview.  It's confusing to us why he has

1   not been yet.  Again, we have some concerns about --

2           THE COURT:  Okay.  I'm not going to get down to

3   this level.  Okay.  You can have concerns about lots of

4   people but that's not what the case is about.  The case is

5   about getting people into USCIS's jurisdiction.  And this

6   guy has an N-426, he's there.  I don't know what else at

7   this point that I need to worry about.

8           All right.

9           MS. WOLLENBERG:  Your Honor, the Kirwa case is

10  about getting people into USCIS's jurisdiction.  The Nio

11  case has been getting people through the USCIS process and

12  not having them held up, waiting for something from the Army

13  or DOD.

14          THE COURT:  I agree.  It's only about waiting for

15  something for DOD or from the Army.  It's not how fast they

16  move through the USCIS.

17          I do not have any reason to say this guy is being

18  held up because of that.  And I'm not going explore that any

19  further. I don't have any reason to say that he is being

20  held up because of the Army.  We don't know that.  And they

21  don't know it.

22          So does anybody at the USCIS side of things know

23  why this guy is not moving along, D. W., Ms. Behar?

24          MS. BEHAR:  Your Honor, I have not looked into

25  that specific case.  I'm not aware.

1          THE COURT:  All right.  Well put that on the list

2     too, along with Y. Y.  Let us have a report on that.  Okay.

3          MR. SHEFFIELD:  Your Honor, I don't know that we

4     have -- I guess I would just ask, if that's going to be on

5     the report, I would just ask that they forward the

6     individual's name (inaudible) you have to figure it out by

7     looking at the list, but there are 200 people.

8          THE COURT:  They will tell you who it is.  All

9     right.

10          I have one last question based on this.  We have a

11     bunch of people who have pending applications.  Some of them

12     are quite new and they don't cause me too much concern.  But

13     there is a group of applications that have been pending

14     since 2017, '18 and '19.  There are about 18.  Why are they

15     pending so long?  What could possibly be -- they're

16     applications for naturalization.

17          MR. SHEFFIELD:  Your Honor, I think we have

18     alluded to this before.  There are all sorts of reasons why

19     individual papers, why it takes them longer to get through

20     an interview with USCIS that had nothing to do with DOD

21     background checks.  And it's not something that we can get

22     into on a case by case basis to explain why that is.  I

23     think it's something that came up.  But it's something that

24     is kind of a sensitive issue sometimes why it is those cases

25     are pending, it's not something that we can discuss in open

1    court.

2           THE COURT:  Yeah, there are -- I think 18.  And

3    there is only a hand full that have not been sent over to

4    USCIS, like three.

5           MR. SHEFFIELD:  Right.  I believe those of all

6    very recent.

7           THE COURT:  New, yeah.

8           So, I don't know that I have anything more to do

9    about that.  The materials have gone.

10          MR. SHEFFIELD:  Correct.

11          THE COURT:  If in fact they're not going through

12   the naturalization process in the normal course, I don't see

13   that it's DOD's fault.

14          MR. SHEFFIELD:  Correct, I don't think there is

15   anything that would indicate from our reporting that there

16   is any kind of a hang up from the DOD to USCIS communication

17   perspective.  We're down to 68 pending cases if that was the

18   case or much less.  You know, I think the number is 37

19   people that don't have an interview or an interview

20   scheduled.  So 37 really is the number to watch here.

21          THE COURT:  37, yeah, and three of them have

22   nothing gone over to USCIS.  And that 37 or whatever it is,

23   36, I've got 18 that were sent over before 2020.

24          So what would you suggest, Ms. Wollenberg?  Other

25   than them sitting around, telling you why they're not moving

1    through?  Unless somebody has some reason to think it's

2    DOD's fault, it's not my problem.

3         MS. WOLLENBERG:  Your Honor, we did provide a very

4    recent example in the submission that we filed last night.

5    Even though material may have gone over from DOD, it does

6    not appear that USCIS, who are adjudicating these, realize

7    that and realize that they shouldn't be waiting on something

8    more from DOD.

9         I'll find it on a report docketed at 302.  But we

10   reported an example from the Long Island Field Office where

11   somebody went to an interview.  And then USCIS officers

12   looked at their N-426, which included some boilerplate

13   language that the Army started adding to those after the

14   injunction in Kirwa that says investigations are ongoing.

15   And the USCIS officer said well, it looks like I'm going to

16   have to wait for your DOD investigation to complete before I

17   can adjudicate your application.

18        So again, our concern is that USCIS hasn't looked

19   into the remaining, which it seems like a manageable number

20   where they could look into it and ensure that it doesn't

21   have something to do with the DOD process.

22        Then the other concern that we have, and that I

23   think you have expressed before, Your Honor, is that, while

24   these adjudications are ongoing, if a soldier gets injured

25   at basic training, somebody with a positive MSSD and gets an

1    uncharacterized discharge, they are now going to be denied

2    naturalization for that reason when that reason didn't exist

3    before.  So there are timing concerns here.

4          So we just want to make sure that USCIS is

5    prioritizing in the way that they have ensured this Court

6    they were, and that they're ensuring that USCIS personnel

7    have all the information about the Court's order and about

8    their representations.

9          THE COURT:  Wait one second.  What is the specific

10   case?  All these generalized concerns are way beyond my --

11         MR. SHEFFIELD:  Your Honor, I know that case and I

12   can address it.

13         THE COURT:  Go ahead.  Do we have initials or

14   something?

15         MR. SHEFFIELD:  USCIS is aware of the case.  USCIS

16   advised me that the officer, the USCIS officer that is being

17   described there simply made a mistake in those remarks.

18   That person has now been approved for naturalization and

19   they are scheduled to take the oath on August 4.  So to the

20   extent --

21         THE COURT:  Okay.

22         MR. SHEFFIELD:  -- finding these errors and

23   addressing them, that's a perfect example of how that

24   happened.

25         THE COURT:  Do we have initials?  I don't see any

1  reference specifically here.  I see D. W.  But after that do

2  you have something?

3            MS. WOLLENBERG:  It's not an initial, Your Honor,

4  we didn't put initials.  It's part four, the very last page,

5  page 13, where the heading is USCIS offices and personnel

6  still are not following the Court's order regarding the

7  unlawful of DOD's N-426 revocation policy and USCIS's MSSD

8  policy.

9            THE COURT:  Okay.  He has addressed that.  And the

10  person now has had their interview and is going to be sworn

11  in.  So, I think that we've covered everything.

12            I am not going to think that the next person is

13  going to be at this micro level.  Specific instances that

14  you want to bring to their attention through this process,

15  that's fine.  But in terms of requiring them -- they're

16  going to report back to us on D. W.  You'll give them the

17  full name and Y. Y.  Those will both be on August 14th.

18            Now, I want to --

19            MS. WOLLENBERG:  Your Honor, I think you said

20  August 12.

21            THE COURT:  Okay.  Thank you.  August 12 for those

22  two people.

23            Mr. Sheffield, you don't know who is replacing

24  you?

25            MR. SHEFFIELD:  No, I don't have a name yet.

1          THE COURT:  To me, the Nio is similar to Kirwa.

2    But it's more complicated because we didn't have any kind of

3    preliminary injunction.  But the Court's involvement,

4    regardless of who the judge is, is basically over.  We've

5    got everybody through except for -- I think after you

6    interview the 37 people, some are brand new to the process.

7    So, there is a hand full.  But no Court is going to, without

8    evidence that it's DOD's fault, has no more involvement.  I

9    don't know, Mr. Sheffield.

10          Let's go off the record please, Lisa.

11          (A discussion was held off the record)

12          THE DEPUTY CLERK:  Civil action 18-1551.  Calixto

13    versus United States Department of Army.  We have all the

14    plaintiffs.  Ms. Wollenberg on the video.  Jeremy Haugh is

15    on the phone.

16          THE COURT:  Let me ask the same question regarding

17    the Calixto plaintiffs.

18          Mr. Haugh, are you available on the phone?

19          MR. HAUGH:  Yes, Your Honor.  I'm right here.

20          THE COURT:  All right.  I know you told me they

21    had all been naturalized now, all plaintiffs that were named

22    in Calixto who have not been eliminated by me.

23          Do any of these people, I should ask Ms.

24    Wollenberg, still have concerns regarding their discharge by

25    the Army?

1      MS. WOLLENBERG:  Yes, Your Honor.  And on the

2 Calixto case, I believe what we just discussed with you last

3 time is that we think the next step there is to file an

4 amended complaint.  And we would ask you for leave to file

5 an amended complaint.

6      THE COURT:  Well, can I ask what that is all

7 about?

8      MS. WOLLENBERG:  In terms of what we anticipate in

9 terms of the amendment?

10      THE COURT:  Yeah.  What is going to be the gist of

11 your complaint?  It's a class action about what?

12      MS. WOLLENBERG:  It would probably be both

13 individual relief issues as well as class claims.  And in

14 terms of what we see as the primary issues, there are some

15 issues with the individuals who were subject to a discharge

16 process already and that not being cleared up by the Army.

17 And then having ramifications that they can't get fixed.

18 There is also an entire group, many hundreds of DEP soldiers

19 or regular Army soldiers who were discharged supposedly

20 without notice.

21      THE COURT:  The two part notice, right?  Is that

22 the issue?

23      MS. WOLLENBERG:  The Army's position now is that

24 they only needed the first discharge order and that they

25 didn't even really have to be given notice; that they only

1  had to have a particular paper in their file.  And we

2  disagree with that position.

3        THE COURT:  And do you have a plaintiff for that

4  yet?

5        MS. WOLLENBERG:  Yes, Your Honor.  We do have a

6  named plaintiffs for all of these.

7        THE COURT:  Well, what is the other?  I don't know

8  that I'm in a position to, or that any judge is in a

9  position to deal with John Jones.  I don't see how that's a

10  federal lawsuit.

11        MS. WOLLENBERG:  I'm sorry, Your Honor.  I'm not

12  following your reference.

13        THE COURT:  Are you going to be bringing

14  individual cases on behalf of individuals because some way

15  or another one of them's discharge was improper or another

16  one, they didn't correct or -- is that a case?  I don't know

17  that that's reviewable.  I don't know.  I just throw it out.

18  But so, I understand the DEPs.  But what is the other group?

19        MS. WOLLENBERG:  The first one I articulated, Your

20  Honor, are the ones who are subject to the MSSR, MSSD

21  process and were subject to discharge actions already

22  without due process and have not had those prior discharge

23  actions addressed by the Army.

24        THE COURT:  Okay.  So these are people -- and they

25  would be DTPs.

1          MS. WOLLENBERG:  That would be a combination of

2    both DEPs and DTPs, Your Honor.

3          THE COURT:  That didn't get that due process, they

4    didn't under that memorandum or whatever --

5          MS. WOLLENBERG:  They're still experiencing

6    negative treatment, have not been reinstated in the way that

7    they should have been reinstated, Your Honor.

8          And there is also a third category, Your Honor, at

9    least as we currently anticipate it, there are soldiers who

10   were previously DEP or DTP.  But that they had gone to basic

11   training, so they weren't in either of those programs

12   anymore.  But because they were discharged before 180 days,

13   they also received uncharacterized discharges.

14         As you remember, Your Honor, the way that we were

15   grouping everyone together is this connection that they're

16   MAVNIs who had enlisted within a certain range of time and

17   who were being subjected to uncharacterized discharge

18   actions.  We do not believe that those folks received the

19   due process that they were entitled to either.

20         THE COURT:  Okay.  Well, so you have class reps

21   for all these, but we don't have any class reps right now.

22   I don't know if we do.  I don't know if any of your people

23   standing fit into any of these categories.  They're not

24   DEPs, that's for sure.

25         We can do one of two things.  We can either -- I

1  don't know.  I thought you would have this by now.  I'm not

2  going to give you approval to file an amended complaint

3  without the other side having the opportunity.  I don't know

4  what I would, you are not going to buy a pig and a poke.

5        My proposal is you dismiss this case without

6  prejudice and when you are ready to reinstate it, then you

7  file your complaint and you won't be penalized under the

8  Statute of Limitations.  I don't know what the Statute of

9  Limitations is frankly.  But I don't think it's a APA six

10 years.  But if you are ready to go, you can move to file it

11 and somebody will decide.  That will get the case going, at

12 least, because the way it is now the complaint is

13 inoperable, I mean it's not useful.

14       MS. WOLLENBERG:  We discussed this the last time

15 that we were in front of you and we have discussed this with

16 counsel for the Army in the past, too.  And they have asked

17 us for an amended complaint.  So at this point, we are

18 prepared and we would ask that we be given leave to amend

19 and that we amend by September 30.

20       THE COURT:  What did the Army say to you?  I

21 didn't hear that part.

22       MS. WOLLENBERG:  The Army has said many times that

23 having an amended complaint should facilitate things here.

24       THE COURT:  Well, why do we have to wait until

25 September 30?  Is the Army, Mr. Haugh, are you agreeing to

1   an amended complaint at this time?

2         MR. HAUGH:  I don't want to take anything off the

3   table.  I think there has always been a question as to

4   whether we would -- what we thought would move the case

5   forward.  We always said that the plaintiffs should file an

6   amended complaint, as you directed back in October.

7         We are nearly now nine months from that.  I don't

8   want to -- and new counsel is coming in.  I don't want to

9   handcuff them if they wish to oppose a motion to amend the

10  complaint, then I think they ought to be able to do that.

11        THE COURT:  Where are you going and when?

12        MR. HAUGH:  Your Honor, I am the one going back to

13  the Army.

14        THE COURT:  Okay.  Well, I think I am going to

15  give you until the end of August, Ms. Wollenberg, to file an

16  amended complaint because, otherwise, I don't have a

17  complaint in the works.  That's for sure.

18        MS. WOLLENBERG:  Your Honor, we can do that.  We

19  were thinking that, with the change in counsel, that the

20  additional time would allow us to confer with the newly

21  assigned counsel and see if some of the issues can be

22  resolved pre-complaint.  But if the Court prefers the end of

23  August, we can do that as well.

24        THE COURT:  I don't know if they're going to

25  oppose it or not oppose it.

1          Mr. Haugh, do you know?  You said you are leaving

2   August 3rd?

3          MR. HAUGH:  Yes, Your Honor.

4          THE COURT:  Do you have a replacement?  I think

5   you mentioned Sean.

6          MR. HAUGH:  Yes.  Sean Mahard will be sworn in as

7   Assistant U.S. Attorney on Monday, August 3.  From that time

8   on, he will be taking over my cases.

9          THE COURT:  Okay.  You have to file by September

10  8th.  If they don't agree, you are going to have to move

11  under Rule 15 to amend.  So I think you have to give the

12  government an opportunity to look at your amended complaint.

13  Without an amended complaint, the case is obviously going to

14  be dismissed without prejudice for want of prosecution at

15  this point.  It has gone on and on and on.

16         But now if you have some plaintiffs -- I know

17  there was a period of time where the plaintiffs agreed not

18  to file in order to allow settlement discussions.  But now

19  you have until September 8th.  If you don't agree, you have

20  to make a motion under Rule 15.  That's the only thing we

21  can do at this point.

22         That case will be reassigned.  I certainly want to

23  hear about the other two.  The other two seem simple to me.

24  Is there anything else we need to hear from Mr. Haugh now?

25         MR. HAUGH:  I don't think so, Your Honor.

```
1              THE COURT:  Ms. Wollenberg?

2              MS. WOLLENBERG:  Your Honor, let me just confer

3    with counsel here.

4              THE COURT:  Okay.

5              (There was a pause in the proceedings.)

6              THE COURT:  I just want to confirm, about the

7    plaintiffs that were last standing, one was Calixto, et

8    cetera, they've all been naturalized.  There are four or

9    five.  Those people do not yet have processed complaints?

10             MS. WOLLENBERG:  I don't think that is accurate,

11   Your Honor.  Some of them may appear in the amended

12   complaint.

13             THE COURT:  Okay.

14             The last I knew, we had a Calixto plaintiff named

15   Calixto, Di is another one.  I guess -- remind me how to

16   pronounce it, D-j-o-h-i, then there was another -- I can't

17   read it, Odari (ph) is that that person still on the list?

18   Then a Lu and a Quan and another Lee.  Those are the people

19   that were last -- I don't know.  All right.  Too hard to

20   figure out.

21             So some of them have been removed.  But Calixto,

22   Di, Q-u?

23             MS. WOLLENBERG:  Your Honor, I'm not sure--

24             THE COURT:  Okay.

25             MS. WOLLENBERG:  -- who of the original or added
```

```
 1   plaintiffs along the way will fit into --

 2             THE COURT:  Okay.

 3             MS. WOLLENBERG:  -- the amendment or not at this

 4   point.

 5             THE COURT:  Okay, that's fine.  I just wondered if

 6   any of these people have live complaints. They have all

 7   naturalized.  We know that.

 8             Mr. Haugh, anything further for you?

 9             MR. HAUGH:  No, Your Honor.

10             THE COURT:  Ms. Wollenberg, anything for you?

11   We'll have a complaint filed by the 8th, and with or without

12   the consent of the government.

13             And Mr. Haugh, you'll let your replacement know

14   what is going on.  If I had my way, I would --

15             MR. HAUGH:  Your Honor, he is also on this call,

16   so he is hearing it as well.

17             THE COURT:  All right.  Okay.  I would like to see

18   if I can get Nio and Kirwa resolved.  Then I will reassign

19   the other two cases instead of giving somebody four cases.

20   So, if you could kindly, with Mr. Sheffield and Mr. Swinton,

21   see what you can do, Ms. Wollenberg, in terms of a permanent

22   injunction.  Okay.

23             MS. WOLLENBERG:  Yes, Your Honor.

24             THE COURT:  Anything else for the plaintiffs?

25             MS. WOLLENBERG:  No, Your Honor.
```

1        THE COURT:  Okay.  I know the plaintiffs don't

2   agree but I feel as though we've gotten almost just shy of

3   2,000 people naturalized.  And the original class of

4   MAVNIs--

5        There is Mr. Swinton.

6        -- have at least, although it took a long time,

7   many of them have reached the place they wanted to be,

8   they're naturalized citizens.  I'm sure they will be very

9   productive.  I appreciate everybody's efforts in that

10  regards.

11       Mr. Swinton, I mentioned that you have to decide

12  whether the next Court will retain jurisdiction which is

13  something you people will have to think about.

14       All right.  Thank you all.  Good luck.

15       Yes, Ms. Wollenberg.

16       MS. WOLLENBERG:  Your Honor, I spoke with them and

17  I said there was nothing else.

18       We did want to thank you for the time and effort

19  that you spent on this and your clerks spent on this case

20  and the related cases.  And to wish you well in your future

21  endeavors.

22       THE COURT:  Thank you.  The first clerk on this

23  case has now gone through another clerkship.  That's about

24  three or four years of history.  So Allison and Mary have

25  done a great job.

1      I wish you all well and hope we can clear up these

2  matters.

3      Okay.  Thank you.

4      (Whereupon, at 4:02 p.m., the hearing concluded.)

5

6                         oo0oo

7

8                CERTIFICATE OF REPORTER

9              I, Lisa Walker Griffith, certify that

10  the foregoing is a correct transcript from the record of

11  the remotely reported proceedings in the above-entitled

12  matter.

13              Please Note: This hearing was held in

14  compliance with the COVID-19 pandemic and the standing orders

15  of this court, and is therefore subject to the

16  technological limitations of court reporting remotely,

17  including static, signal interference and other restrictions.

18

19

20

21  _____   8-4-2020

22  Lisa Walker Griffith, RPR           Date

23

24

25